STATE EX REL. Jose CASTANEDA,
Plaintiff-Respondent,

v.

Woody WELCH, Chairman, Milwaukee Fire
and Police Commission, Eric Mandel Johnson,
Vice Chair, Milwaukee Fire and Police
Commission, Carla Y. Cross, Leonard J. Sobczak,
Ernesto A. Baca, Members of the Milwaukee
Fire and Police Commission, David L. Heard,
Executive Director and Milwaukee Fire
and Police Commission,
Defendants-Appellants.

Supreme Court

*No. 2004AP3306. Oral argument March 6, 2007.
—Decided July 17, 2007.*

2007 WI 103

(Also reported in 735 N.W.2d 131.)

For the defendants-appellants there were briefs by *Grant F. Langley,* city attorney, *Bruce D. Schrimpf,* assistant city attorney, and *Maurita Houren,* assistant city attorney, Milwaukee, and oral argument by *Bruce D. Schrimpf.*

For the plaintiff-respondent there was a brief by *John F. Ebbott, Ness Flores,* and *Legal Action of Wisconsin, Inc.,* Milwaukee, and oral argument by *John F. Ebbott.*

An amicus curiae brief was filed by *John Celichowski, Karyn L. Rotker, and Laurence J. Dupis,* on behalf of *ACLU of Wisconsin Foundation, Inc., Milwaukee Branch of the NAACP,* and *Milwaukee Inner-City Congregations allied for Hope.*

¶ 1. DAVID T. PROSSER, J. This case is before the court on certification by the court of appeals, pursuant to Wis. Stat. § (Rule) 809.61 (2005–06).[1] It concerns the aftermath of allegedly excessive conduct at a police raid in Milwaukee in September 2002.

¶ 2. Wisconsin Stat. § 62.50(19) authorizes an aggrieved person to file a complaint against a member of the fire or police department (member) [in a city of the "1st class"] alleging conduct sufficient to warrant removal of the member. Wisconsin Stat. § 62.50(19) provides:

> Charges by Aggrieved Person. In cases where duly verified charges are filed by any aggrieved person with the board of fire and police commissioners, setting forth

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

sufficient cause for the removal of any member of either of the departments, including the chiefs or their assistants, the board or chief may suspend such member or officer pending disposition of such charges. The board shall cause notice of the filing of the charges with a copy to be served upon the accused and shall set a date for the trial and investigation of the charges, following the procedure under this section. The board shall decide by a majority vote and subject to the just cause standard described in sub. (17)(b) whether the charges are sustained. If sustained, the board shall immediately determine whether the good of the service requires that the accused be removed, suspended from office without pay for a period not exceeding 60 days or reduced in rank. If the charges are not sustained, the accused shall be immediately reinstated without prejudice. The secretary of the board shall make the decision public.

Wis. Stat. § 62.50(19).

¶ 3. The Milwaukee Fire and Police Commission (FPC) Board promulgated Rule XVII to implement the citizen complaint proceedings in Wis. Stat. § 62.50(19) for complaints in the City of Milwaukee (the City).[2]

¶ 4. Jose Castaneda (Castaneda) filed a complaint seeking declaratory judgment that Rule XVII is invalid and unlawful. Castaneda argues not only that Rule XVII is invalid but also that the FPC Board has no authority to promulgate any rule governing citizen complaint proceedings under subsection (19) of Wis. Stat. § 62.50.

¶ 5. We conclude that the FPC Board has express and implied authority to promulgate a rule implementing Wis. Stat. § 62.50(19) pertaining to complaints by aggrieved persons against a member. However, we con-

---

[2] The full text of Rule XVII is reprinted in the Appendix attached hereto.

clude that the FPC Board exceeded its authority in adopting Rule XVII because at least four provisions of the rule contravene the language or intent of Wis. Stat. § 62.50(19). Therefore, we modify and, as modified, affirm the judgment of the circuit court declaring Rule XVII invalid in its entirety.

## FACTS AND PROCEDURAL HISTORY

¶ 6. This action arose from a police raid at El Rey grocery store and tortilla factory on September 18, 2002. Members of the Milwaukee Police Department were executing a search warrant to investigate the sale of prescription drugs. On November 7, 2002, Castaneda and 24 other complainants filed a joint complaint with the FPC pursuant to Wis. Stat. § 62.50(19) concerning this police raid.

¶ 7. According to the allegations in the joint complaint, the police officers exceeded the scope of their search warrant, which was to search El Rey grocery store and tortilla factory for prescription drugs, and instead performed an overbroad search for nonprescription drugs, including narcotics and other controlled substances. The joint complaint also alleged that the police officers engaged in excessive force and violence against innocent employees and customers by doing the following:

 a. Entering the premises screaming and shouting in English only, and manhandling and frightening people who didn't understand their orders;

 b. Entering the premises with their police identities hidden, so that employees and customers could not determine whether they were in fact law enforcement officials;

579

c. Entering the premises with guns drawn, including handguns, shotguns, and semiautomatic rifles, and pointing and waving them at persons;

d. Pointing guns directly in the faces of persons;

e. Jabbing guns hard into the bodies of employees;

f. Forcing pregnant women to lie on their stomachs, then jerking them hard to their feet;

g. Pushing or otherwise forcing employees at the tortilla factory to lie on the ground;

h. In violation of MPD Policy 3/360.15(f), bringing in large and frightening police dogs to the general area where employees were herded together in close confinement.

¶ 8. The joint complaint also alleged that the police officers "improperly and unreasonably detained and imprisoned employees and other persons" by doing the following:

a. In violation of Police Department Rules 3/730.00, 3/730.05 and 3/730.15, handcuffing all the employees at the tortilla factory for one or more hours;

b. In violation of Police Department Rules 3/730.00, 3/730.05 and 3/730.15, handcuffing pregnant women;

c. Blocking all exits so that no employees could leave of their own free will;

d. Forbidding employees and other persons lawfully present to speak or to depart the premises;

e. At the grocery store, ordering employees to raise their hand to request something to drink or to go to the bathroom, and accompanying employees to the bathroom;

f. Detaining employees and other persons for hours;

g. At the grocery store, forcing employees and other persons to stand with their hands above their heads for extended periods of time.

¶ 9. The complainants requested that the FPC investigate the actions of all the police officers involved in the raid, including the chief of police; investigate whether the police department members filed all necessary reports of the incident, including reports of when firearms are pointed at persons; hold a hearing to take evidence; impose appropriate discipline, including suspension or termination, on all officers involved; conduct a policy review of the Milwaukee Police Department search warrant execution policy and procedure; and order the Milwaukee Police Department to issue a public apology to the El Rey employees and customers and to the southside community.

¶ 10. The joint complaint was accompanied by 25 individual complaints on prescribed FPC forms. The completed forms were nearly identical and merely referenced the joint complaint when describing the alleged misconduct. Under the portion of the complaint that asked for facts supporting the alleged misconduct, each complaint included the following: "The alleged misconduct is set forth in the attached joint complaint. I verify that those acts and incidents which I observed are true. I am not verifying that acts or incidents which I did not observe are true."

¶ 11. The joint complaint did not identify any of the police officers involved in the police raid. The inability to identify any of the police officers was allegedly the result of the police officers' deliberate concealment of their identities during the raid. In response to the lack of identification in the joint complaint, the FPC requested and received in December 2002 from the Milwaukee Police Department a list of all police personnel who were present during the execution of the search warrant.

¶ 12. In January 2003 the FPC also requested an additional individual complaint from each complainant in order to identify the specific rule violations that related to each accused.

¶ 13. From mid-February to mid-June 2003, upon receipt of the individual complaints, the FPC was able to identify only two possible rule violations and was not able to link any of the misconduct alleged in the specific individual complaints to any of the 21 officers involved in the raid. In August 2003 several members of the FPC conferred and concluded that, due to the inability to identify the accused police officers, the only alternative available would be to forward the complaints to the chief of police.

¶ 14. On September 30, 2003, Castaneda commenced an action in Milwaukee County Circuit Court for a writ of mandamus directing the FPC to set a date for the trial and investigation of the charges in Castaneda's joint complaint. The action named the Chairman, Vice Chair, and members of the FPC (Board), as well as the Executive Director, as defendants. Two days later, on October 2, 2003, the FPC Board addressed the joint complaint at a meeting. The Board heard from its Committee on Rules and Complaints (Committee), which presented three possible options.

¶ 15. First, the Committee stated it "could recommend that the Board refer matters for conciliation, pretrial and trial, but [it did] not believe that this [was] appropriate given the fact that none of the complaints identify specific acts of alleged misconduct by specific department members."

¶ 16. Second, the Board could "dismiss each of the complaints for lack of prosecutorial merit" on the theory that "[i]f a complainant is unable to identify the individual who may have committed an act of misconduct, there is little likelihood of that complainant being able to prove that a specific department member in fact committed misconduct." However, the Committee did not recommend this option because if the Board dismissed the complaints, it "would be doing nothing more than 'sweeping the matter under the rug.' "

¶ 17. Third, the Committee recommended that the Board refer the complaints to the chief of police "with a firm recommendation from the Board that each complaint be fully investigated and appropriate action taken." The Committee noted that the "Chief has reassured this Board and this community on numerous occasions that any and all allegations of misconduct which are brought to his attention will be fully investigated and acted upon in an appropriate manner. We take the Chief at his word in this regard, and trust that he will do his best to see that justice is done as concerns complainants and department members alike."

¶ 18. The Board accepted the Committee's recommendations, and, on the following day, the Board forwarded "24 complaints" to then Milwaukee Chief of Police Arthur Jones (Chief Jones). In a letter to Chief Jones, the FPC Executive Director, David L. Heard (Heard), explained that the complaints "allege numerous and often broad allegations of misconduct, but do

not identify specific department members who are alleged to have committed any such act(s) of misconduct." Heard explained that the FPC "did not take provisional jurisdiction over these matters and have referred them to [Chief Jones] for a full investigation and appropriate disposition."

¶ 19. Following this referral to Chief Jones, on October 7, 2003, Castaneda filed an amended complaint seeking declaratory judgment that Rule XVII is invalid and unlawful. Specifically, Castaneda asked the circuit court to declare that "FPC Rule XVII Citizen Complaint Procedure is invalid because it is inconsistent with Wis. Stat[]. § 62.50 and because the FPC had no authority under Wis. Stat[]. § 62.50 to promulgate said rule." Castaneda also asked the circuit court to declare that the Milwaukee Police and Fire Department policy and practice that permitted police officers to hide their identities was invalid.

¶ 20. On November 26, 2003, the circuit court ordered the FPC to direct the new Chief of Police, Nannette Hegerty (Chief Hegerty), to expedite the internal investigation concerning the citizen complaints. On December 16, 2003, Chief Hegerty concluded her investigation, and her report to the FPC was forwarded to the circuit court. In her report, Chief Hegerty acknowledged that the El Rey search warrants were executed in a manner similar to procedure routinely performed at drug house raids and other high-risk operations. Chief Hegerty reported that she was instituting some changes "in an effort to ensure that this unfortunate sequence of events does not re-occur in the future." One of the changes was that all personnel involved in the execution of a search warrant would be identifiable at all times, regardless of an operation's degree of risk. Specifically, the change would require that "Tactical Enforcement

Unit Officers, even when outfitted in full tactical gear, . . . have individual identification clearly visible on their outermost garment(s)." In her report, Chief Hegerty also suggested that all the aggrieved parties meet with her and representatives of the FPC to "engage in honest and open communication" and to successfully resolve the complaint.

¶ 21. The circuit court was impressed by Chief Hegerty's report and ordered the parties to "have a productive meeting as referenced in Chief Hegerty's letter." The parties were able to settle the mandamus claim and the "concealed identity" declaratory judgment claim, and the court dismissed those claims without prejudice on December 7, 2004.

¶ 22. However, the parties did not settle the declaratory judgment claim concerning the validity of Rule XVII. In May the circuit court conducted a hearing. On July 15, 2004, the court issued a declaratory judgment declaring Rule XVII invalid as not authorized by and contrary to Wis. Stat. § 62.50. The circuit court determined that Wis. Stat. § 62.50 grants no general rulemaking authority to the Board for enacting Rule XVII. Specifically, the circuit court concluded that Wis. Stat. § 62.50(19) "occupies the field with regards to complaints by an aggrieved person and leaves no room for rules by the [Board]." The circuit court also declared that, "as adopted and implemented, Rule XVII frustrates the intent of the legislature in enacting § 62.50(19)."

¶ 23. The FPC appealed the circuit court's decision, and the court of appeals certified the case to this court. The court of appeals asked this court to determine the scope of the Board's rulemaking authority and whether the Board has authority to promulgate rules concerning the citizen complaint procedure as provided in Wis. Stat. § 62.50(19).

## STANDARD OF REVIEW

¶ 24. The issues presented in this case are whether the Board has authority to promulgate a rule concerning the citizen complaint procedure in Wis. Stat. § 62.50(19), and if so, whether Rule XVII exceeds statutory authority. Whether an agency has authority to promulgate rules requires statutory interpretation, which is a question of law that we review de novo. *See Seider v. O'Connell,* 2000 WI 76, ¶ 29, 236 Wis. 2d 211, 612 N.W.2d 659. Whether an administrative rule exceeds statutory authority is also a question of law that we review de novo, "although we benefit from the analyses of the circuit court and the court of appeals." *Conway v. Bd. of the Police & Fire Comm'rs of the City of Madison,* 2003 WI 53, ¶ 19, 262 Wis. 2d 1, 662 N.W.2d 335.

## DISCUSSION

¶ 25. This case requires us to determine whether the Board has either express or implied authority to promulgate a rule governing the citizen complaint procedure in Wis. Stat. § 62.50(19). If we conclude that the Board does have such authority, we must determine whether the Board exceeded its statutory authority by promulgating Rule XVII. *See Conway,* 262 Wis. 2d 1, ¶ 29.

A. Authority to Promulgate Rules

¶ 26. The legislature may either expressly or implicitly authorize an agency, such as the Board, to promulgate a rule.[3] *Seider,* 236 Wis. 2d 211, ¶ 70. "[A]n

---

[3] The parties do not dispute that the Board of the Milwaukee Fire and Police Commission is to be treated as an adminis-

administrative agency has only those powers as are expressly conferred or necessarily implied from the statutory provisions under which it operates." *Brown County v. DHSS,* 103 Wis. 2d 37, 43, 307 N.W.2d 247 (1981). To determine whether the legislature expressly or implicitly authorized the Board to promulgate a rule, we first examine the enabling statute. *Seider,* 236 Wis. 2d 211, ¶ 70. We strictly construe an agency's enabling statute and "resolve any reasonable doubt pertaining to an agency's implied powers against the agency." *Wis. Citizens Concerned for Cranes & Doves v. Wis. DNR,* 2004 WI 40, ¶ 14, 270 Wis. 2d 318, 677 N.W.2d 612.

¶ 27. To determine whether the legislature gave express authority, we identify the elements of the enabling statute and match the rule against those elements. *Wis. Hosp. Ass'n v. Natural Res. Bd.,* 156 Wis. 2d 688, 706, 457 N.W.2d 879 (Ct. App. 1990). "If the rule matches the statutory elements, then the statute expressly authorizes the rule. However, the enabling statute need not spell out every detail of a rule in order to expressly authorize [the rule]; if it did, no rule would be necessary." *Conway,* 262 Wis. 2d 1, ¶ 31 (citation omitted).

¶ 28. In this case, we look to the identified enabling statute, Wis. Stat. § 62.50(3)(a), to determine whether the legislature expressly authorized the Board to promulgate a rule concerning the citizen complaint procedure under Wis. Stat. § 62.50(19). We look to the

trative agency. *See Conway v. Bd. of Police & Fire Comm'rs of the City of Madison,* 2003 WI 53, ¶ 27, 262 Wis. 2d 1, 662 N.W.2d 335.

plain language of the statute. "If the language of the statute is clear and unambiguous, we apply the language to the facts at hand." *Conway,* 262 Wis. 2d 1, ¶ 30. We also consider the statute in context; that is, "in relationship to the whole statute and to related sections." *Id.* In general, we give words and phrases their common and approved meaning and may consult a dictionary if necessary. *Id.* "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Bruno v. Milwaukee,* 2003 WI 28, ¶ 20, 260 Wis. 2d 633, 660 N.W.2d 656. Thus, "[o]nly if the statute is ambiguous must we turn to extrinsic sources such as legislative history to aid our interpretation." *Wis. Citizens,* 270 Wis. 2d 318, ¶ 7.

¶ 29. Wisconsin Stat. § 62.50(3)(a) provides that "[t]he board may prescribe rules for the government of the members of each department and may delegate its rule-making authority to the chief of each department." The parties disagree whether the authority to prescribe rules for the *government* of the members includes the authority to promulgate a rule relating to citizen complaints under Wis. Stat. § 62.50(19).

¶ 30. On one hand, Castaneda argues that the authority relates only to the *members* of each department whereas the citizen complaint procedure in Wis. Stat. § 62.50(19) relates to the general public. Castaneda agrees with the circuit court that the dictionary definition of "government" is not so expansive as to include authority over investigation and trials. Castaneda compares the language in Wis. Stat. § 62.05(3)(a) to the language in Wis. Stat. § 62.13(5)(g), which concerns disciplinary actions against subordinates in cities not of

the first class.[4] Wisconsin Stat. § 62.13(5)(g) explicitly provides that "[f]urther rules for the administration of this subsection may be made by the board." Castaneda asserts that the absence of comparable language in § 62.50(3)(a) is evidence that the Board does not have broad rulemaking authority to promulgate rules for complaint, investigation, and trial procedures.

¶ 31. Finally, Castaneda argues that the statutory scheme in Wis. Stat. § 62.50 is such that where the legislature intended the Board to have rulemaking authority, it provided language in the statute, such as "in accordance with such rules and regulations." *See, e.g.,* Wis. Stat. § 62.50(4), (7)(a). Where the legislature did not intend the Board to have rulemaking authority, it provided language such as "under this section." *See, e.g.,* Wis. Stat. § 62.50(9), (11), (12), (16), and (19).

¶ 32. On the other hand, the FPC argues that the legislature expressly authorized the Board to promulgate rules for the administration of Wis. Stat. § 62.50(19). The FPC contends that the language in Wis. Stat. § 62.50(3)(a) authorizing the Board to "prescribe rules for the government of the members of each department" includes the authority to prescribe rules concerning disciplinary proceedings before the Board. The FPC cites *Kasik v. Janssen,* 158 Wis. 606, 610, 149 N.W. 398 (1914), which held that the term "government of the members" includes the power to regulate discipline. The FPC observes that Wis. Stat. § 62.50(19) is a disciplinary statute because the trials contemplated under Wis. Stat. § 62.50(19) are only those trials that may lead to the discipline of a member. Therefore, it

---

[4] "Cities of 150,000 population and over shall constitute 1st class cities." Wis. Stat. § 62.05(1)(b). Milwaukee is a first class city.

contends, the Board is expressly authorized to promulgate rules for administering citizen complaints under Wis. Stat. § 62.50(19).

¶ 33. In addition, the FPC argues that the Board has implicit authority to promulgate rules for the administration of citizen complaints. The FPC argues that the Board's responsibilities under Wis. Stat. § 62.50(19) could not be effectuated in the absence of an implied grant of authority to clarify procedure.

¶ 34. We agree with the FPC that the plain language of Wis. Stat. § 62.50(3)(a) gives the Board express authority to promulgate rules concerning the administration of citizen complaints under Wis. Stat. § 62.50(19) insofar as those complaints affect member discipline. The language of the enabling statute—"[t]he board may prescribe rules for the government of the members of each department"—is plain and unambiguous. As defined in the dictionary, "government" means "authoritative direction or control." *Webster's New Collegiate Dictionary* 497 (1977). Therefore, under Wis. Stat. § 62.50(3)(a), the Board may prescribe rules for the authoritative direction or control of its members. As we said in *Kasik,* the authority to prescribe rules for the government of the members "covers all those disciplinary regulations which experience has shown to be valuable and to promote obedience and efficiency." *Kasik,* 158 Wis. at 610.

¶ 35. The circuit court invalidated Rule XVII in its entirety saying that, "The rule making authority of the Milwaukee FPC is limited to rules for governance and selection only. It does not grant authority for rules with respect to investigation and trial procedures." Elsewhere, the court said that the legislature has

evinced "a clear intent to preclude general rulemaking authority in the area of suspension or removal of members."

¶ 36. In our view, the citizen complaint procedure in Wis. Stat. § 62.50(19) does not deal solely with the general public. It also deals with the discipline of members. The citizen complaint procedure in Wis. Stat. § 62.50(19) requires allegations serious enough to lead to removal of a member; it authorizes the Board or chief to suspend a member pending disposition of the charge; and it contemplates discipline of the member, including removal, suspension, or a reduction in rank. Therefore, while Wis. Stat. § 62.50(19) affects how complaints from members of the general public will be processed, it also deals with the discipline of members.

¶ 37. We conclude, therefore, that the plain language of Wis. Stat. § 62.50(3)(a) gives the Board express authority under Wis. Stat. § 62.50(3)(a) to promulgate rules concerning the administration of citizen complaints under Wis. Stat. § 62.50(19). We acknowledge a concern, however, with reliance on Wis. Stat. § 62.50(3)(a) for express authority. While § 62.50(3)(a) gives the Board authority to "prescribe rules for the government of the members of each department[,]" it also authorizes the Board to "delegate its rule-making authority to the chief of each department." We recognize an inconsistency between Wis. Stat. § 62.50(3)(a), which would seem to authorize the Board to delegate to the chief its authority to promulgate rules concerning the citizen complaint procedure, and the rest of the statutory scheme in Wis. Stat. § 62.50, which requires the Board to govern the citizen complaint procedure. While we raise concern with relying on Wis. Stat. § 62.50(3)(a) as the source of express authority for the Board, we do not think such concern precludes a

determination of express authority for the Board in this case. The troublesome issue of whether the Board could delegate its rulemaking authority concerning citizen complaint procedure to the chief of each department is not before us.

¶ 38. We also conclude that even without this express authority, the Board would have implied authority to promulgate rules concerning citizen complaints in Wis. Stat. § 62.50(19). As we stated in *Kasik*, a public officer "has by implication such additional powers as are necessary for the due and efficient exercise of powers expressly granted or such as may be fairly implied from the statute granting express powers." *Kasik*, 158 Wis. at 610. Likewise, the Board has implied authority to promulgate rules to carry out its express powers under Wis. Stat. § 62.50(19).

¶ 39. Castaneda argues that Wis. Stat. § 62.50(19) gives the Board no authority to promulgate rules because the statute includes a directive that the Board "follow[] the procedure under this section" and does not include the expansive language of "in accordance with such rules and regulations." Castaneda's argument would be persuasive if § 62.50 provided the *entire* citizen complaint procedure for the Board to follow. It does not.

¶ 40. Wisconsin Stat. § 62.50 does provide a considerable direction. To illustrate, Wis. Stat. § 62.50(15) requires that notice of trial be served pursuant to the rules of civil procedure. Wisconsin Stat. § 62.50(17) provides the standard for the Board to apply when deciding whether to sustain the charges. Wisconsin Stat. § 62.50(20) permits a member to bring an action in circuit court following imposition of discipline and even provides a sample form for the member to use to

serve notice on the secretary of the Board. A number of other subsections in the section could be cited.

¶ 41. However, while Wis. Stat. § 62.50 in general and subsection (19) in particular provide much detail concerning the citizen complaint procedure, it is not comprehensive and does not provide much direction for the handling and processing of complaints. Wisconsin Stat. § 62.50(19) does not define an aggrieved person, which is very important for standing. It does not indicate how and where an aggrieved person should file a complaint.[5] It requires that the charge set forth "sufficient cause for removal" but does not indicate what an aggrieved person must do to allege sufficient cause for removal. It requires the Board to follow the procedures for the trial and investigation of the charges under Wis. Stat. § 62.50(16), but § 62.50(16) does not provide comprehensive instruction for these procedures.

¶ 42. In sum, Wis. Stat. § 62.50(19) implicitly conveys some powers to the Board because it leaves open some of the methods by which the Board should operate. Therefore, the Board's authority to promulgate rules concerning the administration of citizen complaints is necessarily implied under Wis. Stat. § 62.50(19). *See Kasik,* 158 Wis. at 610.

B. Whether Rule XVII Exceeds Statutory Authority

■■■

¶ 43. Having concluded that the Board has both express and implied authority to promulgate rules concerning the administration of citizen complaints under Wis. Stat. § 62.50(19), we must now determine

---

[5] Unlike Wis. Stat. § 62.50(13) and (20), Wis. Stat. § 62.50(19) does not provide a sample form.

whether the Board exceeded its statutory authority in promulgating Rule XVII. Although the Board has authority to promulgate a rule, the "rule is not valid if it exceeds the bounds of correct interpretation." Wis. Stat. § 227.11(2)(a); *see Seider,* 236 Wis. 2d 211, ¶ 71. "A rule exceeds an agency's statutory authority if it conflicts with an unambiguous statute" by contradicting either the language of a statute or legislative intent. *Id.,* ¶ 72. In cases in which a conflict arises between a statute and an administrative rule, the statute prevails. *Id.* We must consider, therefore, whether Rule XVII contravenes the language in Wis. Stat. § 62.50(19) or frustrates legislative intent.

¶ 44. The circuit court declared Rule XVII invalid in its entirety because the Board did not have authority to promulgate rules on citizen complaints. It then proceeded to address several deficiencies in present Rule XVII that it believed frustrated legislative intent. The circuit court said that, rather than facilitating the processing of citizen complaints, Rule XVII "has served as a barrier to citizens seeking redress from their government." The circuit court noted that "[i]n adopting Rule XVII, the FPC has engrafted a complex layer of requirements onto § 62.50(19) that was not contemplated by the legislature and which serves to frustrate the legislative purpose." The circuit court declared that the requirement in Rule XVII for complainants to identify the officer complained of fails to account for allegations that officer identities were deliberately concealed. The circuit court also concluded that the requirement for complainants to set forth specific rule violations "serves only to frustrate and discourage such complaints."

¶ 45. In addition, the circuit court said that subsection 4(a), which requires complainants to state cause

for removal, and subsection 6(b)(i), which allows the complaint to be dismissed and referred to the Milwaukee Police or Fire Department for investigation and disposition, were in direct contravention of Wis. Stat. § 62.50(19).

¶ 46. At oral argument of this case, Castaneda proffered seven problems with Rule XVII: (1) Rule XVII permits dismissal and referral of the complaint to the chief not only for investigation, but also for disposition; (2) Rule XVII permits dismissal of the complaint where the Board decides that it does not have provisional jurisdiction; (3) Rule XVII permits dismissal of the complaint where the complainant cannot identify police officers who have concealed their identities; (4) Rule XVII permits the complaint to be held with the Committee on Rules and Complaints indefinitely; (5) Rule XVII restricts use of police department records to identification of police officers; (6) Rule XVII prohibits admissibility at trial of any evidence which the Board gathers in its investigation of the complaint; and (7) Rule XVII permits dismissal of the complaint for any reason, including complainant passivity.

¶ 47. In response, the FPC argues that "[b]y adopting Rule XVII . . . the Board was effectuating the purpose of the powers delegated to it under Wis. Stat. § 62.50(19)." The FPC asserts that nothing in Rule XVII is inconsistent with Wis. Stat. § 62.50(19). In response to the circuit court's invalidation of subsection 4(a), which requires the complainant to state grounds sufficient for removal, the FPC argues that subsection 4(a) mirrors the language of Wis. Stat. § 62.50(19), which requires the complaint to set forth "sufficient cause for the removal." In response to the circuit court's invalidation of subsection 6(b)(i), which allows the Board to dismiss and refer the complaint to the chief for inves-

tigation and disposition, the FPC argues that subsection 6(b)(i) is consistent with Wis. Stat. § 62.50(19) "because it allows the Board to refer the matter to the Chief *after* the Board has determined that it does not have jurisdiction over the matter." (Emphasis added.) The FPC contends that this provision does not violate Wis. Stat. § 62.50(19) because § 62.50(19) does not require the Board to hear complaints that do not meet statutory requirements.

¶ 48. Because we have recognized the FPC's authority to promulgate a rule concerning citizen complaints against members, we face the unenviable prospect of trying to dissect Rule XVII section by section, line by line, to determine what parts of the rule are valid and what parts are not. If we were to engage in this sort of analysis, we would be rewriting the rule ourselves and depriving the FPC of the authority we believe it has been given by the legislature. Instead, we declare Rule XVII invalid as a whole because four important provisions of Rule XVII are inconsistent with Wis. Stat. § 62.50(19). We then simply comment on other provisions of the Rule that we believe may frustrate the purpose of the statute. If the FPC decides to promulgate a new rule, it should craft a rule that better reflects the purpose intended by the legislature.

¶ 49. Wisconsin Stat. § 62.50(19) recognizes that persons in the community can be truly aggrieved by the actions or inactions of members of fire and police departments. The statute provides that, in serious cases, these grievants have a right to hold members accountable by presenting verified charges at a public trial. The FPC is not required to facilitate the public trial of a charge under Wis. Stat. § 62.50(19) when the charge is insufficiently serious, if proved, to warrant removal of a member; however, neither FPC rules nor

FPC administration can be permitted to frustrate the right to a prompt public trial when the charge is, in fact, sufficient to warrant removal.

¶ 50. The FPC is conflicted by its statutory role in investigating complaints against members and then sitting in judgment on these complaints. Rules can help to reconcile this conflict without sacrificing fairness either to the grievant or to the member.

## 1. Section 1 is Invalid

¶ 51. Section 1 of the Rule defines a citizen complaint as "any written communication . . . which alleges a violation of rules or standard operating procedures[,]" and which meets the requirements of Sections 2, 3, and 4. This section is problematic because it implies that a complainant must be able to cite a violation of a specific rule or standard operating procedure in order to file a complaint. Furthermore, this section does not assure a consistent response to each complaint.

¶ 52. From the record in this case, it is not clear whether Rule XVII requires a complainant to cite the rule allegedly being violated or simply to describe the alleged misconduct that constitutes a violation. At the motion hearing on the declaratory judgment in the circuit court, the FPC implied that a complainant had the duty to cite a specific rule violation in the complaint. The FPC stated at the hearing that the complainant has "to be able to identify a rule violation or an order violation or violation of standard operating procedures." Earlier in the proceeding, when the circuit court stated that the requirement for a complainant to cite a rule violation was a "sticking point," the FPC responded that "[t]he rules and the [standard operating procedures] are available at every public library. There

isn't a person in the city that cannot obtain a true, correct, accurate copy."

¶ 53. By contrast, there is language in section 4, entitled "Contents and Form of Complaint," that the complainant provide only a "description of the alleged misconduct." In addition, the citizen complaint form does not request the complainant to cite any specific rule violation where it asks the complainant to describe the alleged misconduct. However, the citizen complaint form does state in a paragraph at the top of the form that "[t]he Fire and Police Commission's citizen complaint process is designed to address allegations of intentional acts of misconduct by specific department members which are *violations of Department rules*." (Emphasis added.)

¶ 54. According to an affidavit from David Heard, the FPC's Executive Director, FPC practice is that the FPC staff "reviews the complaint to determine which, if any, rule violations of the Milwaukee Police or Fire Department may have occurred." Heard explained that the FPC staff has a formatted memo that allows the staff members to "summarize in their own words the allegations of the complaint and to provide a list of the most commonly occurring rule violations that staff can literally 'cut and paste' into the memo to match the allegations contained in the citizen complaint."

¶ 55. However, in this case, according to another of Heard's affidavits, the FPC staff "requested from the individual complainants that each complainant attempt to identify the specific rule violation that related to each of the [accused]."

¶ 56. Whatever the practices of the FPC have been, the language of Rule XVII contravenes the language of Wis. Stat. § 62.50(19). Wisconsin Stat. § 62.50(19) does not require the complainant to allege a

rule violation; it requires the complainant to set forth "sufficient cause for the removal." This might be established by a rule violation, but it might also be shown by other means.

¶ 57. Section 1 is misleading because it appears to equate setting forth sufficient cause for removal with alleging a rule violation. The FPC argues that Wis. Stat. § 62.50(19) must be read in conjunction with Wis. Stat. § 62.50(17), which pertains to the just cause standard that the Board is to apply when deciding whether to impose discipline.[6] However, while the just cause standard in Wis. Stat. § 62.50(17) may require the Board to consider whether the member violated a rule or order,

---

[6] Wisconsin Stat. § 62.50(17)(b) provides in part:

In making its determination, the board shall apply the following standards, to the extent applicable:

1. Whether the subordinate could reasonably be expected to have had knowledge of the probable consequences of the alleged conduct.

2. Whether the rule or order that the subordinate allegedly violated is reasonable.

3. Whether the chief, before filing the charge against the subordinate, made a reasonable effort to discover whether the subordinate did in fact violate a rule or order.

4. Whether the effort described under subd. 3 was fair and objective.

5. Whether the chief discovered substantial evidence that the subordinate violated the rule or order as described in the charges filed against the subordinate.

6. Whether the chief is applying the rule or order fairly and without discrimination against the subordinate.

7. Whether the proposed discipline reasonably relates to the seriousness of the alleged violation and to the subordinate's record of service with the chief's department.

Wis. Stat. § 62.50(17)(b).

Wis. Stat. § 62.50 does not require the *complainant* to cite a rule or standard operating procedure to set forth sufficient cause for removal.

¶ 58. To require the complainant to cite a specific rule or standard operating procedure that the complainant believes was violated also frustrates the legislative intent of Wis. Stat. § 62.50(19) because such a requirement is unduly burdensome. First, complainants are typically not represented by counsel. Second, the rules and standard operating procedures are more than 500 pages long. Third, versions of the current rules and standard operating procedures may be inaccessible to the general public. Counsel for the FPC, after having been requested by the circuit court to provide it with a current copy of the Milwaukee Police Department rules and standard operating procedures, conceded that, while the Milwaukee Public Library did have 13 copies, the copies were all from the year 2000 and did not reflect the most current updates. As the circuit court noted, "[t]o require a citizen to comb through these rules and determine which one or ones are applicable . . . is unreasonable and not consistent with the intent to give the citizen access to government."

¶ 59. Section 1, as written, is invalid because it appears to create a barrier to filing a complaint that does not exist in Wis. Stat. § 62.50(19).

2. Section 2 is Invalid

¶ 60. Section 2 is entitled "Who May File a Citizen Complaint." The section is unduly restrictive and therefore frustrates legislative intent. It limits the filing of a complaint to an "aggrieved person," and it defines an aggrieved person as "someone who is *directly* affected by

600

the alleged misconduct, or the parent or legal guardian of a minor who is directly affected by the alleged misconduct." (Emphasis added.) There may be situations in which a person who is not a minor may be unable to file a written complaint. For example, the rule does not provide who may bring a complaint on behalf of deceased victims. Furthermore, the rule does not account for eyewitnesses of wrongdoing who may not be *directly* affected by the alleged misconduct. A well-crafted rule should be able to take account of these special situations.

3. Section 4 is Invalid

¶ 61. Section 4 is invalid, but not for the exact reasons given by the circuit court. The circuit court declared that subsection 4(a) of Rule XVII contravenes Wis. Stat. § 62.50(19) by requiring citizen complaints to state cause for removal. The circuit court reasoned that because Wis. Stat. § 62.50(19) allows the Board to impose discipline less than removal, the complainant need not seek only the remedy for removal in his or her complaint. Therefore, the circuit court concluded that the complainant need not state cause for removal, but may state cause for other disciplinary action, in the complaint.

¶ 62. The circuit court's interpretation is not consistent with our reading of the statute. The statute calls for the complainant to set forth "sufficient *cause for the removal* of [a] member." Hence, the ability to proceed does not depend on the ultimate objective of a complainant in terms of discipline; the ability to proceed under Wis. Stat. § 62.50(19) depends on whether the conduct alleged is "sufficient" to warrant removal of a member. Although Wis. Stat. § 62.50(19) allows the Board to impose discipline less severe than removal, the statute still requires that the complaint satisfy a minimum

standard in setting forth sufficient cause for removal. Subsections 4(a) and (b) of Rule XVII accurately reflect the difference in proceeding under Wis. Stat. § 62.50(19), where the alleged misconduct is sufficient to warrant removal, or proceeding under the City of Milwaukee Charter Ordinance (Charter Ordinance), where the alleged misconduct is grounds for discipline but may not warrant removal.

¶ 63. Therefore, so far as Rule XVII requires a complainant to state cause for removal to proceed under Wis. Stat. § 62.50(19), the rule is valid. In addition, the requirement in section 4 that the complainant specify whether the complaint is being filed pursuant to Wis. Stat. § 62.50(19) or the City Charter is also valid. However, to avoid confusing citizens who may not know under which provision to proceed, a well-crafted rule should clarify the gravity of the "individual acts" necessary under Wis. Stat. § 62.50(19) versus the "individual acts" necessary under the City Charter.[7]

¶ 64. The provision in section 4, which requires the complainant to state the "name, badge number or other identification of the accused member(s)" is invalid. It frustrates legislative intent when it does not account for situations, such as the El Rey police raid,

---

[7] We note that the language in the citizen complaint form is most likely at fault for causing some of the circuit court's confusion and should be modified. The citizen complaint form informs the complainant that he may proceed under Wis. Stat. § 62.50(19) only if he "believe[s] the department member(s) is/are guilty of misconduct which *should* result in the removal (termination) of the member(s) from the department." (Emphasis added.) The language in the citizen complaint form might better direct the complainant to proceed under Wis. Stat. § 62.50(19) only if he believes the alleged misconduct *would* constitute grounds for removal.

where the complainant alleges that the members deliberately concealed their identities. The language may deter complainants from filing a complaint because they do not know the identity of the accused member. The language in any new rule should be less restrictive and request the complainant to provide the identification information or description of the member to the best of his or her knowledge.

¶ 65. We note that the last paragraph in subsection 4(b) implies that the FPC takes measures to identify officers described in the complaint by requesting department records from the fire and police departments. In addition, according to Heard's affidavit, FPC staff works with the fire and police departments to aid in the identification of accused members.[8] While this effort of FPC staff to identify the accused members may be part of the FPC's practice, the language in Rule XVII, the citizen complaint form, and the citizen complaint guide[9] all direct the complainant to identify the officer and suggest that the failure to identify the accused member will lead to a dismissal of the complaint. This must be clarified in any new rule.

4. Section 6 is Invalid

¶ 66. Section 6 is entitled "Provisional Jurisdiction and Further Appropriate Action." There are sev-

_____

[8] In this case, however, the parties disputed whether Castaneda obtained through an open records request the names of the members involved in the police raid or whether the FPC obtained the names.

[9] The "Guide to the Citizen Complaint Procedure" is a publication by the Milwaukee Fire and Police Commission that informs citizens of the complaint procedure and guides them in filling out their complaints.

eral problems with this section. First, subsection 6(a) provides that "[t]he Committee on Rules and Complaints will review all complaints and determine whether the Board has jurisdiction over both the accused member and the subject matter of the complaint." This part of the Rule fails to incorporate any limit on the time to review the complaint before making a recommendation to the Board. In this case, the joint complaint was filed on November 7, 2002. The Committee waited almost a year before it made its recommendations to the Board on October 2, 2003. It appears as though the Board did not decide to act on the joint complaint until after Castaneda filed a mandamus action in circuit court. The absence of any timetable for decision may facilitate delays in making recommendations on complaints.

¶ 67. Under the present rule, the Committee is expected to make a recommendation on the sufficiency of the complaint (jurisdiction over the subject matter) and FPC's jurisdiction over the accused member.[10] Inasmuch as the FPC has decided to have a rule, the rule ought to have some timetable for making decisions. We acknowledge that if a timetable is set, there will be situations that require additional time. These situations should require some formal explanation and the setting of deadlines for determining jurisdiction. If there were no Rule XVII, a grievant would be able to

---

[10] The Board would not have jurisdiction over the accused individual and would be able to dismiss the complaint if, for example, the accused individual is employed by a different governing jurisdiction or if the accused individual has resigned or been terminated for other reasons. In such circumstances, the accused individual is a not a member of either the police or fire department as contemplated under Wis. Stat. § 62.50(19).

604

seek a writ of mandamus without facing the uncertainty inherent in a rule without a timetable.

¶ 68. Preliminary investigation of the complaint prior to a decision on jurisdiction is one of the situations that may require additional time. Referral to the fire or police department may be appropriate as a part of the investigation prior to a determination of jurisdiction.[11] However, the FPC should retain control of the complaint, unless referral to the chief or to a department is made *after* dismissal.

¶ 69. Subsection 6(b) allows the Committee to make recommendations to the Board that are inconsistent with the language in Wis. Stat. § 62.50(19). Subsection 6(b) allows the Committee to make the following recommendations to the Board: (i) dismiss the complaint "for lack of prosecutorial merit or for *such other reason as may be determined by the Committee*[;]" (ii) dismiss the complaint and refer it "to the Milwaukee Police or Fire Department for investigation and disposition;" (iii) proceed with the complaint for conciliation, pretrial, and trial; (iv) hold the complaint "in committee to give staff an opportunity to obtain additional information;" or (v) take "*other such actions as the Committee may deem appropriate.*" (Emphasis added.)

¶ 70. The plain language of Wis. Stat. § 62.50(19) gives the Board only two options: (i) the Board may dismiss the complaint for failure to "set[] forth sufficient cause for the removal of any member of either of the departments;" or (ii) the Board "shall set a date for

---

[11] However, in cases where the chief of either the police or fire department is one of the subjects of the complaint, the Board should not use the chief for help with investigation. In this case, Milwaukee Chief of Police Arthur Jones was one of the subjects of the complaint and should not have been involved in the investigation.

the trial and investigation of the charges, following the procedure under [Wis. Stat. § 62.50]." Wis. Stat. § 62.50(19).

¶ 71. The FPC should not refer the complaint to the fire or police department *for disposition* unless the Board dismisses the complaint on legal grounds. The Board's judgment will then be subject to certiorari review. *See Conway,* 262 Wis. 2d 1, ¶¶ 47–48. To do otherwise is in direct contravention of Wis. Stat. § 62.50(19) and inconsistent with Wis. Stat. § 62.50(12). Wisconsin Stat. § 62.50(12) directs that "[w]henever complaint against any member of the force of either department is made to the chief thereof, the chief shall immediately communicate the same to the board of fire and police commissioners and a trial shall be ordered by the board under this section." Wis. Stat. § 62.50(12). This statutory directive appears to reflect a legislative intent that complaints be directed from the chief to the Board, not vice versa.

¶ 72. The Committee's other options, such as conciliation, may be desirable, but they must not obfuscate or swallow up a complainant's right to a decision under the statute, unless they are pursued *with the complainant's consent.* Dismissal of a complaint with the consent of the complainant is reasonable. Dismissal of a complaint that has prosecutorial merit "for such other reason as may be determined by the Committee" does not square with the statute.

¶ 73. In several respects, then, section 6 is in direct contravention of Wis. Stat. § 62.50(19) because it allows the Board to take actions that are not authorized by the text of the statute.

¶ 74. We now examine other sections of the Rule for comment.

### 5. Section 7

■

¶ 75. Subsection 7(a) authorizes conciliation at the instance of the FPC and then requires a complainant to participate. Failure of the complainant to appear at the conciliation conference results in a recommendation to the Board that the complaint be dismissed. Required conciliation contravenes Wis. Stat. § 62.50(19). Wisconsin Stat. § 62.50(19) states that the Board "shall set a date for the trial and investigation of the charges." It does not mandate that a complainant participate in conciliation. While conciliation may be an effective tool in processing citizen complaints, it must be voluntary under the statute, not mandatory.[12] In addition, the procedure for conciliation should be agreed upon by the complainant and the accused member. Therefore, subsection 7(b)'s requirement that "counsel may act as an observer only" appears to be inconsistent with a grievant's voluntary participation in conciliation. Once again, conciliation will often be helpful, but Wis. Stat. § 62.50(19) does not permit the FPC to force conciliation on an unwilling complainant.

### 6. Section 8

■

¶ 76. Section 8, which requires a written request for an adjournment of trial at least five working days before the scheduled trial date, appears too rigid to

[12] We acknowledge that conciliation has been reported to be "[t]he only aspect of the FPC complaint process that appears to have worked." Richard Jerome, Police Assessment Resource Center, *Promoting Police Accountability in Milwaukee* 50 (2006).

apply in all circumstances. Wisconsin Stat. § 62.50(16) provides that "[t]he accused and the chief shall have the right to an adjournment of the trial or investigation of the charges, not to exceed 15 days." Imposing an inflexible five days notice for an adjournment on a grievant may obstruct the facilitation of the citizen complaint procedure.

## CONCLUSION

¶ 77. We affirm as modified the circuit court's judgment declaring Rule XVII invalid. We invalidate sections 1, 2, 4, and 6 and therefore affirm the circuit court's invalidation of Rule XVII in its entirety. We affirm the circuit court's invalidation of subsection 6(b)(i). We reverse, however, the circuit court's invalidation of subsection 4(a), which requires complainants to state cause for removal. We also reverse the circuit court's conclusion that the Board has no authority to promulgate rules concerning citizen complaint proceedings under Wis. Stat. § 62.50(19).

¶ 78. If the Board wants to promulgate a rule, it should craft a rule that better reflects the purpose intended by the legislature of providing persons with serious grievances against a member the right to present those grievances at a public trial.

¶ 79. We are advised that under this present Rule, the Board has conducted only four trials, has imposed no discipline in 491 complaints since 1998, and has conducted no trials since 2001. Although parts of the Rule are plainly defective, the court is hard pressed to rally to its defense in the face of these statistics. If the Board wants to promulgate a rule, it should start over and devise a rule that assures fair procedures for members without creating an obstacle course for persons with a grievance.

¶ 80. We recognize some of the challenges that are inherent in the citizen complaint procedure as provided in Wis. Stat. § 62.50(19). For instance, we recognize the sensitive balance between the Board's duty to remain neutral and its duty to facilitate citizen complaints. However, because complainants are often unrepresented by counsel, the Board's staff must bear some responsibility with regard to the technical aspects of the complaint, such as assisting with identifying the accused member, citing a specific rule violation, and aiding a complainant in deciding whether to proceed under Wis. Stat. § 62.50(19) or the Charter Ordinance.

¶ 81. We recognize that the Board is a citizen body charged with many responsibilities under Wis. Stat. § 62.50. We affirm the Board's use of the chief to help with its investigation of the charges, but we must invalidate the Board's practice of referring a complaint to the chief for investigation *and* disposition, at least until the Board formally dismisses the complaint for insufficiency.

¶ 82. We conclude that the Board does have authority to promulgate rules under Wis. Stat. § 62.50(19). However, the Board exceeded its statutory authority in promulgating sections 1, 2, 4, and 6 of Rule XVII. We therefore declare Rule XVII invalid in its entirety.

*By the Court.*—The order of the circuit court is modified and, as modified, affirmed; rights declared.

¶ 83. PATIENCE DRAKE ROGGENSACK, J., did not participate.

## APPENDIX

## RULE XVII

## CITIZEN COMPLAINT PROCEDURE

Section 1. CITIZEN COMPLAINT DEFINED. A citizen complaint is any written communication received by the Fire and Police Commission which alleges a

violation of rules or standard operating procedures by a member of either the Fire or Police Department, which meets the requirements of Sections 2, 3 and 4 below.

Section 2. WHO MAY FILE A CITIZEN COMPLAINT. Any aggrieved person may file a written complaint alleging misconduct by a member of either the Fire Department or Police Department. An aggrieved person is someone who is directly affected by the alleged misconduct, or the parent or legal guardian of a minor who is directly affected by the alleged misconduct.

Section 3. WHERE AND HOW TO FILE. A complaint alleging misconduct by a member of either the Fire or Police Department must be filed by mailing or delivering a properly executed complaint to the Board of Fire and Police Commissioners, City Hall, 200 East Wells Street, Room 706, Milwaukee, WI, 53202.

Section 4. CONTENTS AND FORM OF COMPLAINT. The complaint must state, in plain language, the full name, address and telephone number of the complainant; the name, badge number or other identification of the accused member(s); the date, approximate time and location of the incident; and a description of the alleged misconduct. The complainant (aggrieved person) must specify whether the complaint is being filed pursuant to Section 62.50(19) of the Wisconsin Statutes or the City of Milwaukee Charter Ordinances.

(a) If the complaint is filed under the State Statute, the complaint must describe individual acts of each accused member which would constitute grounds for removal (firing) of the member(s) from the department. The complaint must be signed by the aggrieved person, or the parent or legal guardian of an aggrieved minor, in the presence of a notary. The person signing the complaint must, upon oath or affirmation, declare that the contents of the complaint are true and correct to the best of that person's knowledge. The complaint must also be signed and dated by a notary.

610

(b) If the complaint is filed under the Charter Ordinance, the complaint must describe individual acts of each member accused which would be grounds for discipline. The complaint must be signed by the aggrieved person or the parent or guardian of an aggrieved minor.

The Fire and Police Departments shall permit the Executive Director, or designee, to access all department records other than personnel records which are relevant to the incident stated in the complaint, as may be necessary to determine the identity of the officer(s) involved. Any records reviewed are for this limited purpose only. Should provisional jurisdiction be granted, the accused member(s) shall, upon request, be provided with copies of documents used to establish identity.

Section 5. RECEIPT OF COMPLAINT AND TRANS-MITTAL TO BOARD. Upon receipt of a complaint at the Fire and Police Commission, a docket number will be assigned. The complaint will then be given to the Committee on Rules and Complaints and placed on the Rules and Complaints Committee agenda.

Section 6. PROVISIONAL JURISDICTION AND FURTHER APPROPRIATE ACTION.

(a) The Committee on Rules and Complaints will review all complaints and determine whether the Board has jurisdiction over both the accused member and the subject matter of the complaint.

(b) The Committee will report to the Board recommendations regarding provisional jurisdiction and will recommend one of the following alternatives:

(i) that the complaint be dismissed for lack of prosecutorial merit or for such other reason as may be determined by the Committee, or that the complaint be dismissed and referred to the Milwaukee Police or Fire Department for investigation and disposition; or

611

(ii) that the matter be referred to the Board, or to a Hearing Examiner to be designated by the Board, for conciliation, pretrial and trial; or

(iii) that the complaint be held in committee to give staff an opportunity to obtain additional information; or

(iv) other such actions as the Committee may deem appropriate.

(c) Upon receipt of the recommendation of the Committee, the Board, by majority vote in open session, will make and announce its decision regarding whether provisional jurisdiction will be granted and how the matter is to proceed.

(d) If provisional jurisdiction is not granted, the Board will dismiss the complaint and will advise the complainant in writing of the denial and the reason(s) for such denial.

(e) If the Board grants provisional jurisdiction, the complainant will be notified in writing of such action. A copy of the complaint and a Notice of Complaint will be served upon the accused member(s) and the Chief of the department, with a statement indicating the department rule which is alleged to have been violated.

Section 7. REFERRAL FOR CONCILIATION, PRETRIAL AND TRIAL. PROCEDURE.

(a) Any complaint which is recommended for trial pursuant to Section 6(b)(ii) above may be referred for conciliation. Written notice of a conciliation conference, to take place within thirty (30) calendar days of referral, will be sent to both the complainant and the accused member, or their counsel. The notice will indicate the date, time and place of conciliation conference and will advise the parties that the attendance of both the complainant and the accused member is required.

(b) The conciliation conference will be conducted by a member of the Board or the Board's designee. The conference will be informal, with both parties encour-

aged to discuss the matter in an attempt to resolve it short of trial. Either party may be accompanied by legal counsel, but counsel may act as an observer only. The purpose of the conciliation conference is to seek resolution, not pretrial discovery, and statements made at the conciliation conference will not be admissible at time of trial. Any Board member who participates in the conciliation conference will not, unless both parties agree in writing, participate in any subsequent trial on the complaint. No individual who participates in the conciliation conference may sit as Hearing Examiner (see Section 10 below), unless both parties agree in writing.

(c) Failure of the complainant to appear at the conciliation conference shall result in a recommendation to the Board that the complaint be dismissed. Members of both departments are required to appear at the conciliation conference. Failure of the accused member to appear shall result in a referral to the chief of the appropriate department for investigation and possible disciplinary action.

(d) If a mutual agreement is reached at the conciliation conference, both parties will be asked to sign a statement of resolution stating that the dispute has been resolved and that the matter may be dismissed. If the resolution requires any further action by either party, the statement of resolution will specify the action required and state that, upon completion of the action required, the matter is to be dismissed. A copy of the signed statement of resolution will be given to each party. When the complainant and accused notify the Board that all necessary action has been completed, the matter will be recommended for dismissal, based upon successful conciliation, at a meeting of the Board.

(e) If no conciliation agreement is reached, the matter will be returned to the Committee on Rules and Com-

plaints for dismissal or scheduling of a pretrial conference or other action as the Committee deems appropriate.

(f) The purpose of the pretrial conference is to attempt a final settlement effort, narrow the issues to be tried, and shorten the length of time necessary to complete presentation of evidence at trial. To accomplish these tasks, the pretrial conference will include:

(i) Final settlement negotiations; and,

(ii) Establishment of dates for the exchange and filing of witness and exhibit lists; and,

(iii) Establishment of dates for the exchange of accurate copies of exhibits; and,

(iv) Determination of the issue(s) to be addressed at trial; and,

(v) Execution of a Pretrial Order by the Hearing Examiner, with a copy supplied to parties, setting forth the trial date and any remaining requirements for trial preparation by the parties, with deadlines for such activities.

(g) A request for postponement of the conciliation conference or pretrial must be submitted in writing to the Board at least five (5) working days prior to the scheduled conciliation or pretrial date. The Board will decide whether to allow the postponement.

(h) Both parties must provide witness and exhibit lists to the Board and the opposing party. Copies of all proposed exhibits will be supplied to the opposing party according to the schedule determined at the pretrial conference. Actual copies of proposed exhibits need not be filed with the Board until they are introduced at trial.

(i) Failure of either party to exchange witness lists, exhibit lists or copies of proposed exhibits according to

614

the scheduling order, unless an extension is granted in writing by the Board or its designated Hearing Examiner, may result in denial of the right to call any witness or present any exhibit not supplied in a timely fashion pursuant to this section. Denial may be made, at the discretion of the Board, either prior to trial or at time of trial upon the motion of opposing party or counsel.

Section 8. TRIAL DATES AND ADJOURNMENTS. The Hearing Examiner will set the date and time of trial and will notify the complainant and the accused by mail, at least fourteen (14) calendar days before the trial. The accused and the complainant have the right to an adjournment of the trial date not to exceed fifteen (15) calendar days provided that a written request for adjournment is received by the Board at least five (5) working days before the scheduled trial date. Any subsequent request for adjournment of the trial date must be in writing and received by the Board at least five (5) working days prior to trial and must state the reasons for the request. The Board may grant any adjournment request upon a proper and timely showing of good cause. The Board may adjourn any trial at its own volition.

Section 9. TRIAL PROCEDURE. WITNESSES. Witnesses may be required to attend any scheduled trial and give testimony when served with a Board subpoena. Preparation and service of a subpoena is the responsibility of the party desiring attendance of the witness.

Section 10. TRIAL BEFORE THE EXAMINER. PROCEDURE. The Hearing Examiner will preside over any trial and is authorized to make any and all evidentiary rulings necessary during the trial. Procedural and evidentiary rules governing trials before the Board will also apply to trials before the Hearing Examiner. Within twenty (20) calendar days after the close of the proceedings, the Hearing Examiner will provide to the Board a transcript of the proceedings and a report

summarizing the evidence presented, and containing proposed findings of fact, conclusions of law and a recommended disposition. At the same time, a copy of the report only will be mailed to all parties or their respective counsels. Within twenty (20) calendar days of mailing the report to the parties, the parties may file written briefs with the Board setting forth their respective positions. Any reference to the transcript of the proceedings must be accompanied by pertinent portions of the transcript. Within ten (10) calendar days of the filing of the briefs, the Board may, at its option, schedule the matter for oral argument. The Board will meet on the date scheduled for disposition and, after receiving oral argument, if necessary, deliberate in closed session. The Board shall then, in open session, render a decision, which will either accept the Hearing Examiner's report or will make appropriate modifications to it. If the Board determines that the charges are sustained, it will then proceed to the dispositional phase in accordance with Section 20 of this Rule.

Section 11. TRIAL BEFORE THE BOARD. PRESIDING OFFICER. The Hearing Examiner will preside at a trial before the Board, and shall be responsible for conducting the trial. The Hearing Examiner will rule upon all matters arising in the course of the trial provided Fire and Police Commission members are in attendance and all decisions, determinations and dispositions are made by the Board members.

Section 12. GENERAL CONDUCT OF TRIAL. DECORUM. All trials conducted under this rule will, to the extent possible, be informal. Testimony may be elicited either through interrogation or in narrative form. The Wisconsin Rules of Evidence will apply in the same manner that they apply in a civil case. The Board may relax the rules of evidence if it deems the interests of justice to be served thereby. The trial shall be conducted to assure fundamental fairness to the parties. Objections to evidentiary offers and offers of proof

616

regarding evidence ruled inadmiss[i]ble may be made and incorporated into the record. Witnesses may be sequestered at the request of either party or upon motion of the Board.

Section 13. INADMISS[I]BLE EVIDENCE. Evidence resulting from personnel investigations of the Fire Department or Police Department, or from an investigation by the City Attorney for the purpose of a civil action, or gathered ex parte regarding the specific citizen complaint by investigation of the Board, is not admissible.

Section 14. EVIDENCE ADMISSIBLE BY NOTICE. The Board may take official notice of, and accept as evidence without additional foundation, the constitutions of the United States and the State of Wisconsin, the laws of the State of Wisconsin, applicable case law interpreting relevant legal issues, the Charter of the City of Milwaukee, ordinances of the City of Milwaukee, Fire and Police Commission Rules and By Laws, applicable Fire Department or Police Department rules and regulations, and previous written decisions of the City of Milwaukee Board of Fire and Police Commissioners.

Section 15. DOCUMENTARY EVIDENCE ADMISSIBLE VIA CERTIFICATION OR REASONABLE VERIFICATION. Relevant information or records which are either certified or contain reasonable guarantees of trustworthiness through questioning of the proponent under oath, may be admissible without the necessity of presenting direct testimony from the source of such records.

Section 16. TRIALS OPEN TO PUBLIC. All trials are open to the public.

Section 17. PRESENTATION OF EVIDENCE AT TRIAL. BURDEN OF PROOF. The complainant must prove the charges by a preponderance of the evidence.

617

(That is, the complainant must show that it is more likely than not that the charges are true.) The complainant will make the first presentation of witnesses and exhibits, after which the accused will have a similar opportunity. Cross examination of all witnesses is permitted. Either party may be called as a witness by the other party.

Section 18. TRIAL SUMMATION AND DECISION OF THE BOARD. After presentation of evidence regarding the charges filed against the accused member, each party will be permitted to offer a five (5) minute summation of the evidence. The Board will then deliberate in closed session to consider the testimony and evidence received. Upon reaching a decision by majority vote, the Board will announce its decision on the record, in open session.

Section 19. TRIAL PROCEDURE. FAILURE TO MEET BURDEN TO RESULT IN DISMISSAL. If the Board determines that the complainant has not met the burden of proof, the matter will immediately be dismissed and proceedings terminated. A summary of proceedings, findings of fact and decision will be prepared by the Hearing Examiner and signed by a Board member within three (3) working days after such decision is made. A copy of the written decision will be mailed to each of the parties.

Section 20. TRIAL PROCEDURE. BURDEN MET. DISPOSITIONAL PHASE AND DECISION. At the beginning of the trial, the department will provide the Hearing Examiner with a sealed copy of the employment history and performance records of the accused member(s). These file(s) will be retained by the Hearing Examiner, and will not be opened or viewed by Board members, unless a determination has been made that the charges have been sustained. If the Board finds that the accused violated a department rule or procedure, the Board will review the employment history and performance records of the member(s) or such

618

other personnel records as the Board may request. The Board will then receive testimony, exhibits, and oral argument from each party concerning disposition. Oral argument will be limited to five (5) minutes for each party. After hearing testimony and argument, the Board will deliberate in closed session until a decision is reached by majority vote. The Board will then announce its decision to the parties and the public. A written summary of proceedings, findings of fact and decision will be prepared by the Hearing Examiner and signed by a Board member within three (3) working days after the decision is announced. A copy of the decision will be mailed to all parties.

Section 21. DISPOSITIONAL OPTIONS. Upon a finding of guilt, the Board has the following dispositional options:

(a) Suspension without pay for a set period not to exceed the equivalent of 60 working days; or,

(b) Demotion to a lesser rank within the department, with a corresponding decrease in pay and benefits; or,

(c) Discharge from the department; or,

(d) Other such dispositions as permitted by law.