Wisconsin State Local Government Property
Insurance Fund, Plaintiff-Appellant,

Milwaukee County, Involuntary-Plaintiff,

v.

Thomas A. Mason Company and Zurich Insurance
Company, Defendants-Respondents.

Court of Appeals

*No. 2007AP1112. Submitted on briefs January 31, 2008.
—Decided February 20, 2008.*

2008 WI App 49

(Also reported in 748 N.W.2d 476.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert C. Burrell, W. Ted Tornehl* and *Patryk Silver* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Paul J. Pytlik* of *Hills Legal Group, Ltd.*, Waukesha.

Before Curley, P.J., Wedemeyer and Fine, JJ.

¶ 1. FINE, J. The Wisconsin State Local Government Property Insurance Fund, a state agency created "to provide property insurance for local governments," *Wisconsin Comm'r of Ins. v. Fiber Recovery, Inc.*, 2004 WI App 183, ¶ 3, 276 Wis. 2d 495, 501, 687 N.W.2d 755, 758; WIS. STAT. chs. 604, 605, appeals the circuit court's grant of summary judgment dismissing its subrogation claims against Thomas A. Mason Company, and Mason's insurer, Zurich Insurance Company. The Fund contends that the circuit court erred in determining that: (1) the Fund's subrogation claims against Mason were effectively waived by the Fund's insured, Milwaukee County; and (2) the County's waiver was co-extensive with the insured loss. We affirm.

## I.

¶ 2. The facts material to this appeal are not disputed. By contract dated February 27, 2002, Milwaukee County hired J.F. Cook Company to partially renovate the County's Villa Terrace museum for $234,500. The contract incorporated an edition of the American Institute of Architects' form "General Conditions of the

514

Contract for Construction." Cook hired Mason in a contract dated March 18, 2002, as a subcontractor to do painting work on the renovation project. The subcontract price was $44,392, and the subcontract was on an edition of the American Institute of Architects' "Standard Form of Agreement Between Contractor and Subcontractor."

¶ 3. On May 21, 2002, a Mason employee started a fire at Villa Terrace, and, as the County's insurer, the Fund paid the County more than $1.7 million for the loss. The Fund started this lawsuit seeking a subrogation-recovery against Mason. *See* Wis. Stat. § 605.24(3) ("[T]he fund shall have any right of recovery by subrogation or otherwise against such persons that a private insurer would have . . .").[1]

¶ 4. The County's contract with Cook obligated the County to have insurance in connection with the Villa Terrace project, and waived: (1) the County's right to recover against Cook and Mason; and (2) all rights of subrogation that might flow from a right to recover against Cook and Mason. As material here, the contract provided:

> Unless otherwise provided, the Owner shall purchase and maintain . . . property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of

---

[1] Wisconsin Stat. § 605.24(3) reads in full:

The property fund may name other persons as additional persons protected under s. 605.02, but unless it does so the fund shall have any right of recovery by subrogation or otherwise against such persons that a private insurer would have and shall not lose such right because the governmental unit protected has after commencement of the coverage waived any right of recovery it would otherwise have had, or has thereafter contracted to assume the risk that general law would have placed elsewhere.

subsequent Contract modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles . . . . This insurance shall include interests of the Owner, the Contractor, Subcontractors, and Sub-subcontractors in the Project.

. . . .

The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other . . . for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work . . . . The [insurance] policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

"Project" was defined by the County/Cook contract as "the total construction of which the Work performed under the Contract Documents may be the whole or a part." "The Work" was defined as "the construction and services required by the Contract Documents" and "may constitute the whole or a part of the Project." "Contract Documents" was defined to encompass the "Agreement between the Owner and Contractor" and any modifications.

¶ 5. Although the insurance that the County was required to get under its agreement with Cook was "on a builder's risk 'all-risk' or equivalent policy form," the

516

parties apparently (there is no assertion to the contrary) recognized the policy issued to the County by the Fund that was in effect from January 1, 2002, to January 1, 2003, as covering the damages to Villa Terrace caused by the fire, and, indeed, the Fund paid for that loss. There *was* an "all-risk" endorsement to the policy, but the terms were blank:

**Dollar Amount of Coverage**
Total insurable amount of Project: $

The actual dollar limit of coverage is 120% (120 percent) of the above amount.

(Bolding in original; space to the right of the dollar sign is blank.) Also left blank on the "endorsement" is a place to designate the "Property Covered" (bolding omitted) by the "endorsement."

¶ 6. The subcontract between Cook and Mason required Mason to get insurance in connection with the project, and had a waiver-of-rights and waiver-of-subrogation clause substantively identical to the one in the contract between the County and Cook. That clause, as material here, provided:

> The Contractor and Subcontractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Owner, . . . for damages caused by fire or other causes of loss to the extent covered by property insurance provided under the Prime Contract or other property insurance applicable to the Work . . . . The [insurance] policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or

517

indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

¶ 7. The Fund's insurance contract with the County specifically recognized the County's right to waive the Fund's subrogation right for any loss it paid:

> The Fund may require, from you, an assignment of all rights of recovery against any party for a loss to the extent that payment is made by the Fund. *However, the Fund will not acquire any rights of recovery which you have waived, in writing, prior to the loss, nor will this waiver affect your rights under this policy.* The Fund will not be entitled to recover until you have been made whole. You shall not do anything to prejudice the rights of the Fund.

(Emphasis added.) The Fund contends, however, that WIS. STAT. § 605.24(3) nullifies this provision. As we have seen in footnote 1, § 605.24(3) reads in full:

> The property fund may name other persons as additional persons protected under s. 605.02, *but unless it does so the fund shall have any right of recovery by subrogation or otherwise against such persons that a private insurer would have and shall not lose such right because the governmental unit protected has after commencement of the coverage waived any right of recovery it would otherwise have had, or has thereafter contracted to assume the risk that general law would have placed elsewhere.*[2]

(Emphasis and footnote added.) As explained below, we

---

[2] WISCONSIN STAT. § 605.02 provides:

Any local governmental unit may insure in the property fund its property or property for which it may be liable in the event of damage or destruction. Property insured under this section by a local governmental unit may not also be insured in any other manner unless the manager certifies that additional insurance is necessary, or unless the local governmental unit by resolution, a

518

agree with the circuit court that § 605.24(3) does not nullify the permission granted by the Fund to the County to waive the Fund's subrogation rights.

¶ 8. The Fund also argues, as an alternative to its contention that WIS. STAT. § 605.24(3) nullifies its grant to the County to waive the Fund's subrogation rights, that the waiver is for only the $234,500 contract price and that the Fund is subrogated to what it paid over that amount. As also explained below, we disagree.

## II.

¶ 9. We review *de novo* a circuit court's grant of summary judgment. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). "As with our *de novo* review of summary-judgment determinations, a trial court's application of statutes to facts that are not contested is also reviewed by us *de novo,* as is an interpretation of an insurance contract." *Rebernick v. Wausau Gen. Ins. Co.*, 2005 WI App 15, ¶ 5, 278 Wis. 2d 461, 466, 692 N.W.2d 348, 351 (citations omitted), *aff'd,* 2006 WI 27, 289 Wis. 2d 324, 711 N.W.2d 621. We address the issues presented by this appeal in turn.

A. *Subrogation.*

¶ 10. Under ordinary subrogation principles, an insurer is subrogated to the rights of its insured against third persons when the insurer pays its insured for damages inflicted on the insured by those third persons.

certified copy of which is filed with the manager, decides to insure specified personal property with insurers authorized to do business in this state.

*New Amsterdam Cas. Co. v. Acorn Prods. Co.*, 42 Wis. 2d 127, 132–134, 166 N.W.2d 198, 200–201 (1969) ("The insurer is entitled to all the remedies and securities of the assured and to stand in his place."). Under WIS. STAT. § 605.24(3), the Fund does not "lose such right because the governmental unit protected has after commencement of the coverage waived any right of recovery it would otherwise have had." But there is nothing in either WIS. STAT. chs. 604 or 605 or anywhere else that prohibits the Fund from voluntarily contracting away § 605.24(3)'s protection, as it did here. *See Jindra v. Diederich Flooring*, 181 Wis. 2d 579, 596, 511 N.W.2d 855, 859 (1994) ("One may waive subrogation explicitly in writing."); *Stanhope v. Brown County*, 90 Wis. 2d 823, 845–852, 280 N.W.2d 711, 720–723 (1979) (provision in insurance policy issued to county waiving " 'the defense that the insured [county] is not liable because of the performance of Governmental Functions' " waived the statutory cap on damages "to the extent of the policy limits"). Although *Stanhope* noted that the legislative purpose to protect the public purse *via* the cap on damages was accomplished by the county's purchase of insurance (not considering the presumably extra premium charge to account for the increased risk because of the waiver), *id.*, 90 Wis. 2d at 851–852, 280 N.W.2d at 723, the Fund is presumptively aware of the statutes under which it was created and under which it operates, *cf. State ex rel. Castaneda v. Welch*, 2007 WI 103, ¶ 26, 303 Wis. 2d 570, 586–587, 735 N.W.2d 131, 139 (agency's powers are limited by the statute under which it operates), and presumably set the premiums charged to the County based on the risks it was assuming under that insurance contract, including the clause granting to the County the authority to extinguish the Fund's subrogation rights, an extin-

guishment required by the American Institute of Architects' form-contracts between the County and Cook, and Cook and Mason. Indeed, the Fund's policy with the County specifically represents that the policy is "in accordance with the provisions of Chapter 605, Wisconsin Statutes." We see no reason why the Fund cannot make the informed decision to waive its rights to subrogation.[3]

¶ 11. In sum, the Fund's insurance contract with the County specifically gave the County the power to waive the Fund's right to subrogation: "the Fund will not acquire any rights of recovery which you have waived, in writing, prior to the loss." These words are clear, and we apply them as they stand. *See Woodward Commc'ns, Inc. v. Shockley Commc'ns Corp.*, 2001 WI App 30, ¶ 9, 240 Wis. 2d 492, 498, 622 N.W.2d 756,

---

[3] Although, as the Fund points out, a clause in the County/Cook contract requires the Contractor to "indemnify and hold harmless the Owner . . . from and against claims, damages, losses and expenses . . . arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself)," and there is a similar clause in the Cook/Mason subcontract, these clauses do not conflict with those contracts' waiver clauses, which, as we have seen, specifically provide that "[a] waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise." Harmonizing these provisions, as we must, *see Jones v. Jenkins*, 88 Wis. 2d 712, 723, 277 N.W.2d 815, 819 (1979), it is clear that the contractual duty of indemnification applies with respect to those claims that are not within the scope of the waiver-of-rights and subrogation-waiver clauses—for example, claims made by third parties for injuries caused by the contractor or subcontractor.

759–760. We affirm the circuit court's determination that the Fund does not have subrogation rights against Mason and its insurer.

B. *Scope of the Waiver.*

¶ 12. The Fund contends that the permitted waiver-of-subrogation clause in its insurance contract with the County only encompasses damages not exceeding the $234,500 contract price between the County and Cook because the County/Cook contract required the County (as the "Owner") to merely "purchase and maintain . . . property insurance written on a builder's risk 'all-risk' or equivalent policy form *in the amount of the initial Contract Sum,* plus value of subsequent Contract modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles," and also because the County/Cook contract only waived subrogation rights "for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 *or* other property insurance applicable to the Work." (Emphases added.) Villa Terrace was damaged by the Mason-caused fire beyond the value of "the Work," so we focus on the first disjunctive clause, namely whether limiting the subrogation-rights waiver "for damages caused by fire . . . to the extent covered by property insurance obtained" limits the waiver to the $234,500 contract price.

¶ 13. Although the County as "Owner" was only required by its contract with Cook to buy " 'all-risk' " insurance in connection with the "Project," the insurance the County *actually* "obtained" under the Fund's policy was far broader: what is described by the policy

as "Buildings, Personal Property, Inland." The parties agree that this description was the insuring agreement covering Villa Terrace, and, indeed, the Fund paid more than $1.7 million to the County for the damage to Villa Terrace.[4] It is true, as the Fund points out, that attached to the policy is a two-page document entitled "Builder's Risk Endorsement," which purports to be project-specific, and which *might* have limited the scope of the County's waiver of the Fund's subrogation rights. (Uppercasing omitted.) As we have seen in Part I, however, the "endorsement" was not filled-in. It is thus a nullity and cannot modify the insurance contract or limit the scope of the insurance-contract clause giving the County the right to abrogate the Fund's subrogation rights. Accordingly, we apply that clause, as did the circuit court, as it stands. *See Woodward Commc'ns, Inc.*, 2001 WI App 30, ¶ 9, 240 Wis. 2d at 498, 622 N.W.2d at 759–760.

*By the Court.*—Judgment affirmed.

---

[4] The coverage listed by the policy for "Buildings, Personal Property, Inland" is given as $"1,556,435,443," with a $25,000–deductible, for which a premium of $311,287 was charged. The Fund's policy with the County promised, however, "to pay the replacement cost . . . even when the value shown on the Statement of Values is less than replacement cost."