Rachelle R. JACKSON, Plaintiff-Appellant,

v.

WISCONSIN COUNTY MUTUAL INSURANCE CORP.,
Defendant-Respondent,†

Daniel P. LYNCH and Patrick A. Lynch,
Defendants.

Court of Appeals

*No. 2012AP1644. Submitted on briefs April 2, 2013.
—Decided April 23, 2013.*

2013 WI App 65

(Also reported in 832 N.W.2d 163.)

† Petition for Review.

203

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *D. Michael Guerin, Christopher L. Strohbehn* and *Kathryn A. Keppel* of *Gimbel, Reilly, Guerin & Brown LLP*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Lori M. Lubinsky* and *Timothy M. Barber* of *Axley Brynelson, LLP*, Madison.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. FINE, J. Rachelle R. Jackson appeals the circuit court's grant of summary judgment to Wisconsin County Mutual Insurance Corporation dismissing her complaint against it. Jackson is a Milwaukee County deputy sheriff. She sued Wisconsin County Mutual, contending that she was an insured under the policy issued to her employer Milwaukee County, and that she therefore had underinsured-motorist coverage under it when an underinsured driver hit her while she was working. The circuit court ruled that she was not covered because she was not "using" the underinsured driver's car when he hit her. We reverse.

## I.

¶ 2. Neither party disputes the core facts underlying the legal issue presented by this appeal, namely whether Wisconsin County Mutual's underinsured-motorist policy covers Jackson's injuries. The policy gives underinsured-motorist coverage to "an insured . . . while

205

using an automobile within the scope of his or her employment or authority." (Italics omitted.) Milwaukee County is the "Named Insured." Wisconsin County Mutual does not dispute that Jackson is an "insured" under the policy; the policy says that "*Insured* means: ... Your past and present employees . . . while acting within the scope of their employment or authority." (Italics in original.)

¶ 3. As she indicated in her response to written interrogatories, Jackson "was patrolling the parking structure and baggage drive areas at General Mitchell International Airport immediately prior to the accident." She testified at her deposition that the underinsured driver told her that he had gotten lost trying to find a hotel. She had the car pull to the curb out of traffic, spoke to the driver and his passenger through an open window, and gave them directions to their hotel. The driver then asked her " 'How am I going to get back into traffic?' " Jackson told the driver, " 'I'll go in front of your car, and I'll come around and help you get in traffic.' " She explained that she did that "because he was right in front of the pedestrian walk" and that she had to "[h]elp him get into traffic to proceed on [to] where he was going." Jackson walked in front of the car to ease it into traffic when it moved forward some three or four feet and hit her.

¶ 4. As noted, the circuit court determined that Jackson was not "using" the car that hit her and, therefore, granted summary judgment to Wisconsin County Mutual.

## II.

██

¶ 5. A party is entitled to summary judgment if "there is no genuine issue as to any material fact" and

that party "is entitled to a judgment as a matter of law." WIS. STAT. RULE 802.08(2). We review *de novo* a circuit court's ruling on summary judgment. *Johnson v. Mt. Morris Mutual Ins. Co.*, 2012 WI App 3, ¶ 8, 338 Wis. 2d 327, 332, 809 N.W.2d 53, 56 (Ct. App. 2011). Our analysis of statutes and insurance policies is also *de novo. Wisconsin State Local Government Property Ins. Fund v. Thomas A. Mason Co.*, 2008 WI App 49, ¶ 9, 308 Wis. 2d 512, 519, 748 N.W.2d 476, 480.

¶ 6. We apply both statutes and insurance contracts as they are written. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 662, 681 N.W.2d 110, 123–124 (statutes); *Folkman v. Quamme*, 2003 WI 116, ¶ 13, 264 Wis. 2d 617, 631, 665 N.W.2d 857, 864 (insurance contracts); *Smith v. Atlantic Mutual Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597, 599 (1990) ("[W]hen the terms of an insurance policy are plain on their face, the policy must not be rewritten by construction.").

¶ 7. The Wisconsin County Mutual policy says: "*Using* has the meaning set forth in Wis. Stats. Sec. 632.32(2)(c) and includes driving, operating, *manipulating,* riding in *and any other use.*" (First italics in the original, emphases added.) Section 3150 of 2009 Wis. Act 28 renumbered § 632.32(2)(c) as § 632.32(2)(h), which also reads: " 'Using' includes driving, operating, *manipulating,* riding in *and any other use.*" (Emphases added.) We conclude that "manipulating" combined with "and any other use" encompasses Jackson helping the underinsured driver to safely re-enter traffic. Further, we hold that the policy's phrase "while using *an* automobile within the scope of his or her employment or authority" does not require that the insured be using one of *the* automobiles for which the policy was issued.

## A.

■■

¶ 8. No Wisconsin published decision has set the parameters of what the word "manipulating . . . and any other use" means in the context of this case. Nevertheless, Wisconsin has broadly defined "use." *See Garcia v. Regent Ins. Co.*, 167 Wis. 2d 287, 294, 481 N.W.2d 660, 663 (Ct. App. 1992) ("Since we deal here with coverage clauses in an insurance policy, we are to broadly interpret the words as used in the policies so as to afford the greatest protection to the insured."). Thus, an insured does not "have to be in direct physical contact with the vehicle to be using it." *Id.*, 167 Wis. 2d at 296, 481 N.W.2d at 664.

¶ 9. *Garcia* held that sitting in a car and calling and gesturing to a child that it was safe to cross the street was "using" the car. *Id.*, 167 Wis. 2d at 291, 296, 481 N.W.2d at 662, 664 ("[V]erbal cues and hand gesture . . . constituted 'use' of the vehicle within the meaning of the insurance policies."). Similarly, there was "use" of a vehicle for insurance purposes when dogs tethered to the roll bar of Jeep owned by an uninsured motorist bit a passing pedestrian even though the Jeep's owner was not then present. *Trampf v. Prudential Property & Casualty Co.*, 199 Wis. 2d 380, 383, 387, 389–390, 544 N.W.2d 596, 597–598, 600 (Ct. App. 1996).

■

¶ 10. Broadly reading insurance policies does not, of course, mean that every injury that may have involved a car means "using" that car in connection with that injury. Rather, the "inquiry is whether the vehicle's connection with the activities which gave rise to the injuries is sufficient to bring those general activities, and the negligence connected therewith, within the risk for

which the parties to the contract reasonably contemplated there would be coverage." *Garcia*, 167 Wis. 2d at 295, 481 N.W.2d at 664. Thus, "in each instance we ask whether the injury 'grew out of,' 'had its origin in,' or 'flowed from' the use of the vehicle." *Id.*, 167 Wis. 2d at 296, 481 N.W.2d at 664 (quoted source omitted). Here, Jackson was "using" the underinsured-driver's car because her injuries directly "flowed from" and "grew out of" her helping the driver safely re-enter traffic—a responsibility that was obviously within the scope of her employment.

¶ 11. In contrast to our situation here (and to the situations in *Garcia* and *Trampf*), is where the event causing injury did not flow from or grow out of a car's use. In *Tomlin v. State Farm Mutual Automobile Liability Ins. Co.*, 95 Wis. 2d 215, 290 N.W.2d 285 (1980), a state patrol officer stopped a minor driver. Id., 95 Wis. 2d at 217, 290 N.W.2d at 286–287. The officer saw beer cans on the car's floor, and the driver stabbed him when he was trying to remove a bottle from under the car's seat. *Id.*, 95 Wis. 2d at 217, 290 N.W.2d at 287. *Tomlin* held that the stabbing was not sufficiently connected with the car to be covered by the insurance policy's grant of coverage for injuries " 'sustained by other persons . . . arising out of the . . . use . . . of the owned motor vehicle.' " *Id.*, 95 Wis. 2d at 218, 225, 290 N.W.2d at 287, 291 ("We believe the accident producing the injury must have some causal relationship to the inherent use of the vehicle. On the facts of this case the accident is not one arising out of the use of an automobile.") (first pinpoint quoting policy).

¶ 12. Similarly, in *Snouffer v. Williams*, 106 Wis. 2d 225, 316 N.W.2d 141 (Ct. App. 1982), Richard Snouffer was a passenger in a truck owned by his father, and driven by his brother. *Id.*, 106 Wis. 2d at 226, 316 N.W.2d at 142. The truck was insured by a policy that

209

"provided that it would 'pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.' " *Id.*, 106 Wis. 2d at 227, 316 N.W.2d at 142. Richard Snouffer stayed in the truck while the others got out and knocked over a homeowner's mailbox. *Id.*, 106 Wis. 2d at 226–227, 316 N.W.2d at 142. The homeowner "fired a pistol at the truck. The bullet passed through the truck's door and struck Richard." *Id.*, 106 Wis. 2d at 227, 316 N.W.2d at 142. *Snouffer* held that Richard Snouffer's injury was not sufficiently connected to the "use" of the truck, and, therefore, the policy did not provide coverage. *Snouffer* explained, quoting from 12 *Couch on Insurance* 2d § 45.57 (rev. ed. 1981):

> The use of an automobile may result in a condition which is an essential part of the factual setting which later results in harm. Such antecedent "use" of the automobile is distinct from the harm which thereafter arises from the condition created by the use of the automobile and such later harm does not arise from the "use" of the automobile and is not covered; the mere fact that the use of the vehicle preceded the harm which was later sustained is not sufficient to bring such harm within the coverage of the policy.

*Snouffer*, 106 Wis. 2d at 228, 316 N.W.2d at 142. Here, of course, Jackson's helping the underinsured driver re-enter traffic was not "distinct from the harm" that immediately resulted.

B.

■

¶ 13. Wisconsin County Mutual points to two separate provisions in the policy to argue that the

phrase "*an* automobile" in the underinsured-motorist-coverage grant really means one of *the* automobiles for which the policy was issued. (Emphasis added.) As we have seen, the policy gives underinsured-motorist coverage to "an insured . . . while using *an* automobile within the scope of his or her employment or authority." (Italics omitted, emphasis added.) The other provision explains what triggers underinsured-motorist liability:

> We will pay all sums the insured is legally entitled to recover as monetary damages from the owner or driver of an underinsured motor vehicle because of bodily injury. The bodily injury must be sustained by the insured and must be caused by an accident. The owner's or driver's liability for the damages must result from the ownership, maintenance or use of the underinsured motor vehicle.

These two provisions operate in tandem and require *both* that:

- the tortfeasor's liability "must result from the ownership, maintenance or use of the underinsured motor vehicle"; *and*

- the person whom the policy defines as an "insured" (here, Jackson) must have been "using an automobile within the scope of his or her employment or authority."

Both conditions are met here: the car that hit Jackson was "underinsured," and, as we have already discussed in Part II.A., Jackson was "using" the underinsured car because the word "using" is broadly defined to mean "*manipulating,* riding in *and any other use.*" (Emphases added.) Certainly, as we have already indicated, a deputy sheriff who helps a motorist safely re-enter traffic in an area she is patrolling is "using" the car to

211

avoid injury to the driver, other drivers in the traffic stream into which she was helping him merge, and pedestrians.

¶ 14. We reverse the circuit court's grant of summary judgment to Wisconsin County Mutual, and remand for further proceedings.

*By the Court.*—Judgment reversed and cause remanded.