# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP1644 |
| COMPLETE TITLE: | Rachelle R. Jackson, |
| |         Plaintiff-Appellant, |
| |    v. |
| | Wisconsin County Mutual Insurance Corp., |
| |         Defendant-Respondent-Petitioner, |
| | Daniel P. Lynch and Patrick A. Lynch, |
| |         Defendants. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 348 Wis. 2d 203, 832 N.W.2d 163
(Ct. App. 2013 – Published)
PDC No: 2013 WI App 65

| | |
|---|---|
| OPINION FILED: | June 10, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 13, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | William Sosnay |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | PROSSER, J., did not participate. |

ATTORNEYS:

    For the defendant-respondent-petitioner, there were briefs by *Lori M. Lubinsky*, *Timothy M. Barber*, and *Axley Brynelson, LLP*, Madison, and oral argument by *Lori M. Lubinsky*.


    For the plaintiff-appellant, the cause was argued by *Christopher L. Strohbehn*, with whom on the brief was *D. Michael Guerin*, *Kathryn A. Keppel*, and *Gimbel, Reilly, Guerin & Brown LLP*, Milwaukee.

An amicus curiae brief was filed by *James A. Friedman*, *Dustin B. Brown* and *Godfrey & Kahn, S.C.*, Madison, on behalf of the Wisconsin Insurance Alliance.

**2014 WI 36**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP1644
(L.C. No. 2011CV1407)

STATE OF WISCONSIN       :       IN SUPREME COURT

**Rachelle R. Jackson,**

     **Plaintiff-Appellant,**

  **v.**

**Wisconsin County Mutual Insurance Corporation,**

     **Defendant-Respondent-Petitioner,**
**and**

**Daniel P. Lynch and Patrick A. Lynch,**

     **Defendants.**

**FILED**

**JUN 10, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 N. PATRICK CROOKS, J. This case concerns Rachelle Jackson, a Milwaukee County sheriff's deputy who seeks coverage under her employer's underinsured motorist policy. The policy pays sums owed by an underinsured tortfeasor to an insured person who is injured while "using an automobile within the scope of his or her employment or authority." The policy defines "using" by saying it "has the meaning set forth in Wis.

Stat. § 632.32.(2)(c)"[1] and "includes driving, operating, manipulating, riding in and any other use." This case turns on whether Jackson was "using an automobile" when she was injured.

¶2 Jackson was injured while on duty by a driver to whom she had just given directions. The driver hit her as she walked in front of the car after she stated that she would "help [the driver] get in traffic." Jackson argues that under the policy's definition of "using an automobile" and under case law broadly construing the word "using," her actions with regard to the vehicle that hit her constituted using the vehicle because she was in essence controlling the vehicle. She testified in her deposition that at the time she was hit, she had already "asked" the driver to pull into the parking lane to speak with him, had spoken with him, and had started to "go in front of the car, walk in the walkway" when the driver pulled forward and hit her. She argues that the accident occurred while she was in the process of "manipulating" the car or while she was making some "other use" of the car. There is no assertion that she had stopped traffic or was guiding the driver into traffic at the time of the accident.

¶3 To determine the meaning of the insurance contract, we first look at the policy language itself. We then turn to prior Wisconsin cases interpreting the statute and similar policy

---

[1] This statute is now numbered Wis. Stat. § 632.32 (2)(h) (2011-12); it states, "'Using' includes driving, operating, manipulating, riding in and any other use." All references to the Wisconsin Statutes are to 2011-12 unless otherwise noted.

language, insurance treatises, and cases from other jurisdictions construing the same type of policy language. We conclude that Jackson cannot recover because the actions she took with regard to the vehicle that hit her do not constitute using a vehicle in any way that is consistent with interpretations of "use" in Wisconsin case law or with those of cases from other jurisdictions.

¶4    Even though Wisconsin courts have given the word "using," in the context of insurance policies, quite a broad definition, the definition has limits. See Progressive N. Ins. Co. v. Jacobson, 2011 WI App 140, ¶12, 337 Wis. 2d 533, 804 N.W.2d 838 ("Though 'use' is a broad term and is given a liberal construction, it is not without limitation."); see also Tomlin v. State Farm Mut. Auto. Liab. Ins. Co., 95 Wis. 2d 215, 225, 290 N.W.2d 285 (1980) (finding "arising out of use of vehicle" policy language precluded coverage for state patrolman who was injured by driver after a traffic stop).

¶5    Other Wisconsin case law construing the phrase "using an automobile" or similar phrases in the context of an insurance policy applies an understanding of "use" that is consistent with an insurance treatise definition: "employment for the purposes of the user."[2]  This broad definition helps to define the limits of "use" and further supports our conclusion that Jackson's acts with regard to the vehicle that hit her were not done while she was employing the car for any purpose.  When we review the types

---

[2] 8 Couch on Insurance § 119:37 (3d ed. 2005).

3

of purposes for which vehicles have been employed, we find none in which the control or use of the vehicle is as attenuated as it is here, given that at the time of the accident, Jackson had not begun to guide the vehicle into traffic.

¶6 However, even though we can draw some general guidance from our cases, we recognize that no Wisconsin case directly applies because none has addressed use of a vehicle premised on the person's guiding of the driver. Garcia v. Regent Insurance Company,[3] the case on which the court of appeals relied, held that "a driver's gesture and call to invite and assist a passenger to enter a vehicle is part of the inherent use of a vehicle," but that case is easily distinguishable. Neither its facts (a driver calling and gesturing to a child passenger), nor its analysis (whether a driver's "collateral[] involve[ment]" in a passenger's getting in and of a car is part of its inherent use), nor its conclusion (that inherent use encompasses a driver's helping a passenger who is "boarding") bears any relation to the question presented in this case concerning a person outside a vehicle who purports to be using the vehicle by guiding it.

¶7 No Wisconsin court has addressed a case involving a non-driver who is preparing to guide, but not yet guiding, a vehicle driven by another. Courts from other jurisdictions have considered guidance cases. It is clear that permitting recovery

---

[3] Garcia v. Regent Ins. Co., 167 Wis. 2d 287, 481 N.W.2d 660 (Ct. App. 1992).

by Jackson would not be consistent with interpretations of those courts.  Treatises recognize that under some circumstances a person directing a car from outside the vehicle may be using the vehicle within the meaning of insurance policy language.

¶8  Holdings from these cases and holdings in Wisconsin cases are based on the same principles for construing insurance policies, and we find them helpful.  A review of those cases[4] is helpful because it reveals what a "using by guiding" case requires:  "For example, where the driver cannot see where he is going and completely trusts the guide to direct his movements, the guide can be considered a user because the actual driver is essentially an automaton, responding solely to the guide's directions."[5]

¶9  By comparison to that scenario, Jackson's testimony was that the accident happened before she went to stop the traffic:  "I looked at [the driver] when I walked—as I was going

---

[4] A representative example from this line of cases is one in which a man helped a tractor-trailer driver back a truck up on a worksite.  The court's conclusion was based on the following reasoning:

> [the] hand signals to the driver effectively determined the direction and movement of the tractor-trailer and were required by the driver for the completion of the intended maneuver of the vehicle.  Accordingly, there was a causal relationship between the incident in which [the signaler] was injured and the employment of the tractor-trailer as a vehicle . . . .

Slagle v. Hartford Ins. Co., 594 S.E.2d 582, 587 (Va. 2004).

[5] 8 Couch on Insurance § 111:39 (3d ed. 2005).

in front of the car, but after that I was looking at the traffic to see when it was safe for me to walk out and to stop it so I could help him get in [to the lane of moving traffic]." Jackson, by her own undisputed testimony, was not controlling the car at the time of the accident and had not, in fact, begun to guide the vehicle into traffic.

¶10  We conclude that Jackson was not using the vehicle at the time of her injury, and we therefore reverse the court of appeals.[6]

## I.   BACKGROUND

¶11 Jackson's deposition testimony regarding the circumstances of the accident can be summarized briefly.  She was on duty on a sidewalk at the Milwaukee airport when a lost motorist pulled up near her and asked how to get to a specific hotel.  She "asked him if he could pull over to the curb," which he did; then she bent down to speak into the window, standing one or two feet away from the car, and answered his question. The driver and passenger said they had gotten lost and ended up at the airport after a long drive.  After Jackson gave the directions to the hotel, the driver asked, "How am I going to get back in traffic?" Jackson said she responded, "I'll go in front of your car, and I'll come around and help you get in traffic."  As Jackson walked on the pedestrian walkway in front of the car, the car "move[d] three or four feet" at about five

_____

[6] _Jackson v. Wis. Cnty. Mut. Ins. Corp., et al._, 2013 WI App 65, ¶7, 348 Wis. 2d 203, 832 N.W.2d 163.

miles per hour and hit her. She described the accident as follows:

> [A]s soon as I get in front of the car, like, midway, I feel a hit or a tap on my leg . . . . I'm thinking to myself, "Did I just get hit?" And I put my hands on the . . . hood of the car, raise up my left leg because I'm trying to jump out of the way of the car. The right leg hit – as I go on the side of the car – I said, "You realize you just hit me. Park the car."

¶12 The accident report states that Jackson "was helping [the vehicle] with directions and walked into the crosswalk with flashing stop sign to stop traffic when [the vehicle] attempting to enter traffic struck the deputy almost knocking her down."

¶13 Jackson brought this action against several parties, including her employer's insurer, Wisconsin County Mutual Insurance Corporation (WCMIC), which had issued a public entity liability insurance policy that, under an endorsement, provided underinsured motorist benefits to Milwaukee County deputies.

¶14 WCMIC moved for summary judgment on the ground that Jackson was not "using an automobile" at the time of the accident, as its policy requires for coverage. The Milwaukee County Circuit Court, the Hon. William Sosnay presiding, acknowledged that "there is not a lot of case law on this" and granted summary judgment to the insurer, holding that "the court would be stretching the law to allow for coverage based upon the conduct and the facts as they have been presented . . . ."

7

¶15 The court of appeals reversed, relying principally on language from Garcia. That case——which involved a driver sitting in the driver's seat in his car, motioning to an intended passenger, a child, across the street——stated that the driver's conduct, consisting of "verbal cues and [a] hand gesture," constituted "use" of the vehicle within the meaning of the insurance policies, and that "[the driver,] while tending the vehicle with engine running, . . . called and gestured to [his approaching passenger] to get into the car." Garcia v. Regent Ins. Co., 167 Wis. 2d 287, 296, 300, 481 N.W.2d 660 (Ct. App. 1992). The Garcia court considered "invit[ing] and assist[ing] a passenger to enter a vehicle" to be "part of the inherent use of a vehicle" because vehicles are used to transport passengers. Id. Garcia also reiterated prior Wisconsin case law holding that an insured does not "have to be in direct physical contact with the vehicle to be using it." Id. at 296.

¶16 Citing Garcia's language, along with the general principle that coverage clauses are broadly interpreted "to afford the greatest protection to the insured," id. at 294, the court of appeals concluded that "'manipulating' combined with 'and any other use' encompasses Jackson helping the underinsured driver to safely re-enter traffic." Jackson v. Wis. Cnty. Mut.

8

Ins. Corp., et al., 2013 WI App 65, ¶7, 348 Wis. 2d 203, 832 N.W.2d 163.

II. STANDARD OF REVIEW AND PRINCIPLES OF INTERPRETATION

¶17 "[W]hether an insurance policy affords coverage . . . [is a] question[] of insurance contract interpretation subject to de novo review." 1325 N. Van Buren, LLC v. T-3 Grp., Ltd., 2006 WI 94, ¶23, 293 Wis. 2d 410, 427-28, 716 N.W.2d 822. "The same rules of construction that govern general contracts are applied to the language in insurance polices. An insurance policy is construed to give effect to the intent of the parties as expressed in the language of the policy." Folkman v. Quamme, 2003 WI 116, ¶12, 264 Wis. 2d 617, 665 N.W.2d 857. Here, we focus on a phrase that limits who is an insured for purposes of an underinsured motorist endorsement. We start with the premise that the proper interpretation of that phrase has to be one that gives it effect and recognizes that it is intended to draw a line between who is covered and who is not covered.

¶18 This case comes to us following a grant of summary judgment.

> We review a grant of summary judgment de novo, relying on the same methodology as the circuit court. Summary judgment is proper where the record demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Schinner v. Gundrum, 2013 WI 71, ¶¶35-36, 349 Wis. 2d 529, 833 N.W.2d 685 (internal citations omitted).

III. DISCUSSION

¶19 To be an insured under Section II.B. of the UIM endorsement, Jackson must meet three requirements.  It is undisputed that she meets the first two: that she was an insured under the policy and that she was within the scope of her employment.  The sole question we address[7] is whether Jackson was "using an automobile" and, therefore, met all three requirements.  The contested language we will focus on is found in sections II.B. and V.C. of the Underinsured Motorist Endorsement to the policy:

I.   Insuring agreement
A. We will pay all sums the insured is legally entitled to recover as monetary damages from the owner or driver of an underinsured motor vehicle because of bodily injury. The bodily injury must be sustained by the insured and must be caused by an accident. The owner's or driver's liability for the damages must result from the ownership, maintenance or use of the underinsured motor vehicle. . . .
II. Who is an insured
. . .
B. Any person qualifying as an insured under the Who Is an Insured provision of the policy <u>while using an automobile</u> within the scope of his or her employment or authority. . . .
V. Definitions
        . . .

---

[7] WCMIC raises a second argument against coverage: that "[t]he clear intent of the UIM endorsement is to provide coverage to someone 'using' a vehicle other than the underinsured vehicle involved in the accident." Pet'r's Br. at 35.  Because we resolve this case on the first issue raised, we need not address the alternative argument.

   C. Using has the meaning set forth in Wis. Stats. Sec.
      632.32(2)(c) and <u>includes driving, operating,
      manipulating, riding in and any other use</u>.

(Emphasis added. Capitalization omitted.)

¶20 "Using" is defined in the endorsement as including "driving, operating, manipulating, riding in and any other use." No party asserts that Jackson was driving, operating or riding in the vehicle. In order for Jackson to satisfy the requirement of "using an automobile," therefore, her actions at the time the accident occurred must be categorized as "manipulating" an automobile or as an "other use" of an automobile.[8]

¶21 Jackson describes the accident in the context of the whole encounter with the driver, starting with the direction to the driver to pull to the curb and ending with the final order to park the car after the accident occurred. She argues that in her series of interactions with the driver of the vehicle, she was in the process of manipulating the vehicle, in the sense that she was controlling where it went, and she cites to a dictionary definition of "manipulate" as meaning "control." She argues that her stepping in front of the vehicle was a part of the process that began when she indicated to the driver that he

---

[8] We observe that the definition of "using" employed here could be claimed to be open-ended because it states that the word "includes" certain activities without expressly limiting its meaning to those activities. Jackson's arguments, however, do not turn on this aspect of the definition.

11

needed to pull over to the curb and would have lasted through the point when she helped him pull back into traffic and drive away.

¶22 In support of her position, she cites the language "any other use" as signifying a recognition that there are more kinds of uses than those enumerated. She also points to cases that have broadly construed policy language requiring, as a condition of coverage, that an injury arise out of the use of a vehicle. For example, in Lawver v. Boling, 71 Wis. 2d 408, 412, 238 N.W.2d 514 (1976), the plaintiff was injured after a fall from a pulley-operated lift that was tied to the defendant's pickup truck. Plaintiff's injury was deemed to be "bodily injury . . . arising out of the . . . use of an automobile." Id. This was based on the fact that the court found it reasonable to expect that a pickup truck in a farm setting "will be put to a variety of uses beyond the ordinary transportation of persons and goods from place to place." Id. at 416. Jackson also points to Garcia, 167 Wis. 2d at 291-92, in which the court of appeals considered whether the injuries to a child who had been hit by a passing car were injuries "arising out of" the use of the insured's vehicle. The driver had gone "to the park to find [the child]" and, sitting in the driver's seat of his car, beckoned the child to cross the street by "gestur[ing] with his hand . . . that it was all right for her to come" with her

12

mother in the car for a trip to the grocery.  The court concluded that the injuries arose from "use" of the vehicle, reasoning that the driver's communication to the child was an expected part of picking up a passenger, and transporting passengers was, in turn, an expected use of a vehicle:

> The jeep in this action is designed to, among other things, carry passengers.  Within the reasonable ambit of such use are the necessary incidental activities of boarding and alighting and the reasonable expectation that, in certain instances, the operator may be collaterally involved in such activity.

Id. at 297-98.  In language that Jackson cites as relevant to this case, the court stated that the driver's "call and gesture to [the child] constituted 'use' of the vehicle . . . ." Id.

¶23 On the other hand, WCMIC characterizes Jackson's actions as helping the occupants of the vehicle rather than controlling or manipulating the vehicle's movements, and notes that at the time of the accident Jackson was simply walking in the pedestrian walkway in front of the vehicle, not gesturing or waving.  It points out that the cases on which Jackson relies construe broader policy language than the language at issue

13

here.[9] The policy terms in those cases state that the insured is covered for damages "arising out of the use of" a vehicle. That language differs in two ways from the relevant language in this case: first, it includes the expansive phrase "arising out of,"[10] and, second, it requires "use of" a vehicle without limiting whose use it must be. Unlike that language, the language of the endorsement at issue here specifically defines an insured for purposes of UIM endorsement coverage as an insured "while using an automobile," a formulation that requires the insured to be

---

[9] For example, Garcia involved two policies, one of which covered "damages arising out of the . . . use of a car." Garcia 167 Wis. 2d at 292. See also Lawver v. Boling, 71 Wis. 2d 408, 415, 238 N.W.2d 514 (1976) (policy at issue "provides coverage for injuries arising out of the use of an automobile") and Tomlin v. State Farm Mut. Auto. Liab. Ins. Co., 95 Wis. 2d 215, 218, 290 N.W.2d 285 (1980) (policy would pay damages for accident "arising out of the . . . use . . . of the owned motor vehicle").

[10] "As used in a liability insurance policy, the words 'arising out of' are very broad, general and comprehensive. They are commonly understood to mean originating from, growing out of, or flowing from, and require only that there be some causal relationship between the injury and the risk for which coverage is provided." Lawver v. Boling, 71 Wis. 2d at 415.

the user of the vehicle.[11] WCMIC therefore argues that this case is distinguishable from the cases Jackson cites because it involves narrower policy language.

¶24 WCMIC also distinguishes this case from cases from other jurisdictions where, in the context of insurance coverage disputes or sovereign immunity claims, "use" of a police vehicle has been found even when law enforcement officers were on foot directing traffic, so long as their nearby vehicles were part of the traffic management activity.  See, e.g., Maring v. Hartford Cas. Ins. Co., 484 S.E.2d 417, 420 (N.C. Ct. App. 1997) (officer standing in intersection directing traffic was using vehicle when lights and sirens were activated and police radio was turned up so he could communicate from outside the vehicle); Argonaut Ins. Co. v. Jones, 953 N.E.2d 608, 612, 622 (Ind. Ct. App. 2011) (placing police vehicle in the lane of highway, leaving the engine running, and activating the emergency lights on her vehicle to redirect traffic was using vehicle "for one of its intended purposes"); Oberkramer v. Reliance Ins. Co., 650

---

[11] As to the difference between the phrases "arising out of the use of" and the "while using an automobile," it has been explained that the former "describes the accidents for which coverage would be afforded an insured under the policy and relates to coverage of the event causing injury" and the latter "describes who is an insured and relates to coverage of a particular person." 34 Am. Jur. 2d Proof of Facts § 585 (1983), citing W. Cas. & Sur. Co. v. Crawford, 635 F.2d 667, 670 n.2 (8th Cir. 1980).  This case relates to the question of coverage of a particular person.

S.W.2d 300, 302-03 (Mo. Ct. App. 1983) (officer who was standing away from his vehicle while it was parked across road in road block with lights activated was using vehicle); Great Am. Ins. Co. v. Cassell, 389 S.E.2d 476, 477 (Va. 1990) (similar holding regarding fire truck use). Though Jackson is a law enforcement officer, these cases provide no relevant guidance for the question presented by this case, because they concern coverage based on the use of the law enforcement vehicle. There is no claim here that Jackson was using a sheriff's vehicle in any manner, and none of the law enforcement cases cited involved a claim that an officer was using a vehicle being driven by someone else.

¶25 The parties' differing views of the meaning of the word "using" in the context of an insurance policy boil down to this. Jackson can cite numerous cases where Wisconsin courts have interpreted "using a vehicle," for purposes of insurance coverage, to include activities that are not what the ordinary person would necessary call using a vehicle. In some of these cases, the person who sought to invoke coverage was not driving or touching the vehicle. WCMIC, while it does not seek to overturn Garcia or any cases relied on by Jackson, points out that on the facts of this case, we are past the outer limits of what "using a vehicle" can be understood to mean because no case so far has found "use" by a person in Jackson's type of circumstances, and to do so would vastly expand coverage.

¶26 Progressive Northern Insurance Company, 337 Wis. 2d 533, ¶18, summarizes the "use" cases briefly:

> These activities [deemed to be "use"] can range beyond ordinary transportation, but generally involve some closely related activity. See Thompson [v. State Farm Mut. Auto. Ins. Co.], 161 Wis. 2d at 458-59[,] [468 N.W.2d 432 (1991),] (insurer could reasonably expect that a truck might be used for hunting, and that a hunter might use the truck bed as a platform from which to hunt); Lawver [v. Boling], 71 Wis. 2d 411, 416[,] [238 N.W.2d 514 (1976)] (raising and lowering a platform using a truck and pulley constitutes "use" of the vehicle); Allstate Ins. Co. v. Truck Ins. Exch., 63 Wis. 2d 148, 158, 216 N.W.2d 205 (1974) (reasonable and expected "use" of a van includes loading and unloading hunting equipment); Trampf [v. Prudential Prop. and Cas. Co., 199 Wis. 2d [380] at 389, [544 N.W.2d 596 (Ct. App. 1995)] ("use" includes transportation of dogs in the bed of a vehicle);

17

Garcia, 167 Wis. 2d at 297-98, 481 N.W.2d 660 (driver's call and gesture to pedestrian subsequently hit while crossing the street a "use" of the vehicle); Tasker v. Larson, 149 Wis. 2d 756, 761, 439 N.W.2d 159 (Ct. App. 1989) (leaving a child in a vehicle during a brief errand reasonably consistent with inherent nature of vehicle).

¶27 Jackson relies especially on the Garcia case. In essence, she analogizes the facts in that case to the facts of this case: if it is "using a vehicle" for a driver sitting inside a vehicle to call and gesture to an intended passenger outside the vehicle to direct the passenger to come to the vehicle, then it is "using a vehicle" when a person outside the vehicle speaks and gestures to the driver. We note here that Jackson's deposition testimony contained no reference to gesturing to the driver at any point. She did state that she was planning "to stop traffic," but in fact the accident occurred before she did so.

¶28 We turn to Wisconsin case law that deals with construing language similar to the "while using a vehicle" phrase in the endorsement. It is evident that "use" has been broadly construed on occasion. Nevertheless, as we have noted previously, the word's meaning "is not without limitation," Progressive N. Ins. Co., 337 Wis. 2d 533, ¶12, and the cases "do not suggest that the term 'use' must be read so expansively as to include a boundless number of activities." Garcia, 167 Wis. 2d 287 at 296.

18

¶29 Both the circuit court and the court of appeals correctly stated that this case did not have any clear Wisconsin precedent. The circuit court stated, "There is not a lot of case law on this." The court of appeals stated, "No Wisconsin published decision has set the parameters of what the word 'manipulating' . . . and [']any other use' means in the context of this case." Jackson, 348 Wis. 2d 203, ¶8.

¶30 The courts below were correct that this scenario has not been addressed in Wisconsin in a "using a vehicle" case. Nevertheless, a review of what constitutes "use" in Wisconsin case law is a good place to start. As we will see, these cases are consistent with a broad definition of "use" given in an insurance treatise: "The term 'use' is a broad catchall designed to include all uses of the vehicle not falling within the terms 'ownership' or 'maintenance,' and involves simply employment for the purposes of the user." 8 Couch on Insurance, § 119:37 (3d ed. 2005).

¶31 In Lawver we recognized the "range of reasonable uses" to which a vehicle may be put: "It is reasonably to be expected that [the vehicle] will be put to a variety of uses beyond the ordinary transportation of persons and goods from place to place." Lawver, 71 Wis. 2d at 416. The concept of "employment for the purposes of the user" is not explicit but is implicit in each of the cases.

19

¶32 In Lawver, the vehicle was being put to use "as a power source in performing necessary farm repairs," or, stated more simply, it was used to pull a rope attached to a lift.[12] In Tasker, the truck was used, "for safety as well as convenience," as a place to leave a small child.[13] In Thompson, the bed of the pickup was used, as a special permit allowed, as a "flat elevated surface from which to hunt" for the convenience of disabled hunters.[14] In Trampf, the vehicle was used to transport dogs.[15] In Allstate, the vehicle was used to transport "rifles, ammunition, and supplies" on a hunting outing.[16] In Garcia, the vehicle was used to carry passengers, which, the court reasoned, meant that it was sometimes used by the operator while calling and gesturing to passengers who were "boarding and alighting."[17]

¶33 Jackson's actions with regard to the vehicle and driver were not employing the vehicle for Jackson's purposes;

---

[12] Lawver v. Boling, 71 Wis. 2d 408, 411, 416, 238 N.W.2d 514, 516, 518 (1976).

[13] Tasker v. Larson, 149 Wis. 2d 756, 761, 439 N.W.2d 159, 161 (Ct. App. 1989).

[14] Thompson v. State Farm Mut. Auto. Ins. Co., 161 Wis. 2d 450, 459, 468 N.W.2d 432, 435 (1991).

[15] Trampf v. Prudential Prop. and Cas. Co., 199 Wis. 2d 380, 390, 544 N.W.2d 596 (Ct. App. 1995).

[16] Allstate Ins. Co. v. Truck Ins. Exch., 63 Wis. 2d 148, 158, 216 N.W.2d 205, 210 (1974).

[17] Garcia, 167 Wis. 2d at 298.

thus, from the outset, this case differs from "the variety of uses" that our case law has recognized.  It is reasonable to conclude that Jackson was not "using" the vehicle involved here.

¶34 Garcia does not compel a contrary result.  It simply does not follow from the reasoning in that case that a non-passenger standing outside the vehicle who speaks to the driver is using a vehicle in the same way as a driver sitting inside a vehicle who calls and gestures to an intended passenger outside the vehicle.  Even if it did, to apply Garcia in that fashion to this case would ignore the fact that there is no indication whatsoever in the record that Jackson gestured to the driver here.  The most that can be said is that when the accident happened, Jackson had just told the driver she was about to stop traffic and "help" the driver "into traffic," but she had not yet begun to do so.

¶35 Whether a person getting ready to direct a driver where to go is using the vehicle within the meaning of an insurance policy, such as the one at issue here, is a question that has not been clearly put to courts in other jurisdictions.  In Couch on Insurance, Section 111:39, it states, however, that "a person may be considered to be 'using' a vehicle for purposes of an omnibus clause by guiding or giving signals to the actual operator of a vehicle."  8 Couch on Insurance, § 111:39.

21

> In determining who constitutes a user of a vehicle for the purposes of an omnibus clause, it is generally required that if one who claims to be a user was not actually driving the vehicle, that individual must have exercised some form of control over it. Control is therefore the primary factor in determining whether signaling directions elevates an individual to the status of 'user' under an omnibus clause. . . . [W]here the driver cannot see where he is going and completely trusts the guide to direct his movements, the guide can be considered a user because the actual driver is essentially an automaton, responding solely to the guide's directions.

Id.

¶36 Such a rule is not inconsistent with our holdings in prior cases, such as the holding that "[n]either does the insured have to be in direct contact with the vehicle to be using it." See Garcia, 167 Wis. 2d at 296 (citing Tasker v. Larson, 149 Wis. 2d 756, 761, 439 N.W.2d 159 (Ct. App. 1989)). However, cases from other jurisdictions clearly do not support the application of such a rule on these facts. The gap between what constitutes "using by guiding" and the facts present here becomes clear as one reviews the facts of the other jurisdictions' "controlling the vehicle" cases.

¶37 The courts determining whether a person was "using by guiding" have focused on how much control the driver of the vehicle was ceding to the person who was acting as a guide. For example, where a man helped a tractor-trailer driver back a truck up on a worksite, the court reasoned that

> [the] hand signals to the driver effectively determined the direction and movement of the tractor-

22

> trailer and were required by the driver for the completion of the intended maneuver of the vehicle. Accordingly, there was a causal relationship between the incident in which [the signaler] was injured and the employment of the tractor-trailer as a vehicle . . . .

Slagle v. Hartford Ins. Co., 594 S.E.2d 582, 587 (Va. 2004). Where a case similarly involved "active control or guidance of a backward movement of a truck," the signaler was deemed to have "used" the truck because he had "participate[d] in the operation of the truck to such an extent as to be a User of the vehicle." Woodrich Const. Co. v. Indemnity Ins. Co., 89 N.W.2d 412, 418-419 (Minn. 1958). In another case, the court relied on "[t]he undisputed fact[] . . . that Hill was placed in the following flag car with a radio in order to communicate with the driver of Dorwin's truck because the latter could not see the boom's position from inside the truck." Insurance Co. of N. Am. v. Royal Globe Ins. Co., 631 P.2d 1021, 1023 (Wash. Ct. App. 1981). It therefore concluded that the person communicating with and guiding the truck was "using" the truck within the meaning of the relevant language. Id. In reaching that conclusion, the court noted that it was indistinguishable from another case, Liberty Mutual Insurance Company v. Steenberg Construction Company, 225 F.2d 294 (8th Cir. 1955):

> Steenberg was an action by a general contractor against a subcontractor's insuror . . . . The subcontractor was supplying mixed concrete for the

23

general contractor's use in laying a floor. An employee of the general contractor signalled the subcontractor's truck driver while backing up, and the cement truck struck and injured a third person . . . . The [appellate court affirmed the] trial court, [which] . . . held that the active directing by the general contractor of the backward movement of the truck and the following by the subcontractor's driver of the signals given to him both activities having been performed as incidents to the construction work made the participation of the general contractor such a part of the actual operation of the truck as to constitute the contractor's using the automobile within the meaning of the omnibus clause.

631 P.2d 1021, 1022-23 (emphasis added).

¶38  As one court noted,

It is difficult and probably impossible to formulate an exact measure of the degree of control which a person not owning or driving the particular automobile must exercise over it in order to have the type of responsibility for its potential to do injury so as to be deemed entitled to the protection of automobile liability coverage. Obviously the expression 'while using' is intended to describe the appropriate relationship, but does not readily supply an answer in situations of the type now before us.

Hake v. Eagle Picher Co., 406 F.2d 893, 895, 896 (7th Cir. 1969) (citing a case in which a property owner had been deemed to be using the automobile within the meaning of an automobile liability policy "where by signalling directions to the driver the owner of the premises or his employee has exercised immediate control over the movement of the automobile").

¶39  However, this case does not reach the level of a close case because everything relevant to this case happened before Jackson began to guide the vehicle.  To revisit Jackson's

24

description of what she did with regard to the vehicle that hit her, recall that she stated that she "asked [the driver] if he could pull over to the curb," then bent down to speak into the window, standing one or two feet away from the car, and answered his question. After that, the driver asked, "How am I going to get back in traffic?" Jackson said she responded, "I'll go in front of your car, and I'll come around and help you get in traffic." As Jackson walked on the pedestrian walkway in front of the car, she was hit. She described the accident as follows:

> [A]s soon as I get in front of the car, like, midway, I feel a hit or a tap on my leg . . . . I'm thinking to myself, "Did I just get hit?" And I put my hands on the . . . hood of the car, raise up my left leg because I'm trying to jump out of the way of the car. The right leg hit – as I go on the side of the car – I said, "You realize you just hit me. Park the car."

Jackson conveyed four points of information to the driver: a request to pull to the curb, directions to the hotel he was seeking, an offer to help him pull back into traffic, and an order to park the car after she was hit. She touched the vehicle as she tried to evade being hit.

¶40 Unlike the cases in which the person guiding or giving directions was "controlling" and therefore deemed a user of the vehicle, Jackson did not exercise such control over the vehicle to the extent that she essentially became the user. She was not communicating with, signaling, or exercising active control over the vehicle at the time of the injury.

IV. CONCLUSION

25

¶41  To determine the meaning of the insurance contract, we first look at the policy language itself.  We then turn to prior Wisconsin cases interpreting the statute and similar policy language, insurance treatises, and cases from other jurisdictions construing the same type of policy language.  We conclude that Jackson cannot recover because the actions she took with regard to the vehicle that hit her do not constitute using a vehicle in any way that is consistent with interpretations of "use" in Wisconsin case law or with those of cases from other jurisdictions.

¶42  JUSTICE DAVID T. PROSSER did not participate.

*By the Court.*—Reversed.